UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TARGET STRIKE, INC. and § | | |
| GOLD RESOURCES OF § | | |
|   NEVADA, LLC(GRN I) § | | |
| § | | |
|       Plaintiffs, § | | |
| v. § | CIVIL ACTION NO. | |
| § | | |
| MARSTON & MARSTON, INC.; § | SA-10-CV-0188 OLG (NN) | |
| MARSTON ENVIRONMENTAL, INC.; § | | |
| CLIFFORD R. "KIP" WILLIAMS; § | | |
| WILLIAM J. HARTLEY; § | | |
| GOLD REEF INTERNATIONAL, INC.; § | | |
| GOLD REEF OF NEVADA, INC.; § | | |
| CRANDELL ADDINGTON; § | | |
| SADIK AL-BASSAM; § | | |
| RICHARD CRISSMAN CAPPS; § | | |
| LOU B. KOST, JR.; § | | |
| LOU KOST HOLDINGS, LTD.; § | | |
| WILLIAM SHAFFER; § | | |
| PAUL STROBEL; § | | |
| PANTHER RESOURCES, INC.; § | | |
| PANTHER RESOURCES § | | |
|   PARTNERS LLLP; § | | |
| ADDKO, INC.; § | | |
| TEXAS RESEARCH, LLC; § | | |
| L.K. & C.A., INC.; § | | |
| MEXIVADA MINING CORPORATION; § | | |
| OTHER UNKNOWN DEFENDANTS § | | |
|   ACTING IN CONCERT WITH THE § | | |
|   ABOVE NAMED DEFENDANTS, § | | |
| § | | |
|       Defendants. § | | |
| **************************************** | | |
| CLIFFORD R. "KIP" WILLIAMS; § | | |
| RICHARD CRISSMAN CAPPS; § | | |
| WILLIAM SHAFFER; and § | | |
| PAUL STROBEL; § | | |
| § | | |
|       Counter-Plaintiffs, § | | |
| v. § | | |

|  |  |
|---|---|
| **TARGET STRIKE, INC.; and** | § |
| **GOLD RESOURCES OF** | § |
|   **NEVADA, LLC (GRN I).** | § |
|  | § |
|             **Counter-Defendants.** | § |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **WILLIAM J. HARTLEY,** | § |
|  | § |
|             **Counter-Plaintiff,** | § |
| v. | § |
|  | § |
| **TARGET STRIKE, INC. and** | § |
| **GOLD RESOURCES OF NEVADA, INC.,** | § |
|  | § |
|             **Counter-Defendants.** | § |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **CRANDALL ADDINGTON;** | § |
| **SADIK AL-BASSAM;** | § |
| **LOU B. KOST, JR.;** | § |
| **LOU KOST HOLDINGS, LTD.;** | § |
| **RESURRECTION CANYON, INC., f/k/a** | § |
|   **PANTHER RESOURCES, INC.;** | § |
| **RESURRECTION CANYON, LLLP, f/k/a** | § |
|   **PANTHER RESOURCES** | § |
|   **PARTNERS, LLLP;** | § |
| **ADDKO, INC.;** | § |
| **TEXAS RESEARCH, LLC; and** | § |
| **L.K. & C.A., INC.,** | § |
|  | § |
|             **Counter-Plaintiffs,** | § |
| v. | § |
|  | § |
| **TARGET STRIKE, INC, and** | § |
| **GOLD RESOURCES OF** | § |
|   **NEVADA, LLC (GRN I),** | § |
|  | § |
|             **Counter-Defendants.** | § |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| **RESURRECTION CANYON, LLLP,** | § |
| **f/k/a PANTHER RESOURCES** | § |
| **PARTNERS, LLLP,** | § |
|  | § |
|             **Counter-Plaintiff,** | § |
| v. | § |

| | |
|---|---|
| TARGET STRIKE, INC. and<br>GOLD RESOURCES OF NEVADA, LLC,<br><br>        Counter-Defendants. | §<br>§<br>§<br>§<br>§ |

******************************************

| | |
|---|---|
| CLIFFORD R. "KIP" WILLIAMS,<br>RICHARD CRISSMAN CAPPS,<br>WILLIAM SHAFFER and<br>PAUL STROBEL,<br><br>        Counter-Plaintiffs,<br><br>v.<br><br>TARGET STRIKE, INC. and<br>GOLD RESOURCES OF NEVADA, LLC,<br><br>        Counter-Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## THIRD REPORT AND RECOMMENDATION

TO:   Honorable Orlando Garcia
      United States District Judge

This report and recommendation addresses the pending motion to compel arbitration.[1] In the motion, nine defendants—Crandell Addington; Sadik Al-Bassam; Lou B. Kost, Jr.; Kost Holdings, Ltd.; Resurrection Canyon, Inc., formerly known as Panther Resources, Inc.; Resurrection Canyon, LLP, formerly known as Panther Resources Partners, LLLP; ADDKO, Inc.; Texas Research, LLC; and L.K. & C.A., Inc. (they refer to themselves together as the Addington defendants) —sought to compel plaintiffs Target Strike, Inc. (Target Strike) and Gold Resources of Nevada, LLC (GRN I) to arbitrate their claims. In the alternative, the Addington defendants asked the court to dismiss the claims against them.

---

[1] Docket entry # 108.

3

The Addington defendants rely on an option agreement executed between plaintiff GRN I and non-party L.K. & C.A. I, Ltd., requiring disputes between the parties to be submitted to a prior arbitration panel.[2] The Addington defendants assert that the plaintiffs' claims are arbitrable because the claims "are new permutations of old complaints about the management and distribution of various mineral interests."[3] The Addington defendants maintain the option agreement's arbitration clause is broad enough to encompass the claims in this case and ask the court to compel arbitration.[4]

> [T]he first step in evaluating a motion to compel arbitration is to determine whether the parties agreed to arbitrate. This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. In determining whether the dispute falls within the scope of the arbitration agreement, "ambiguities . . . [are] resolved in favor of arbitration." However, . . . federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead "[o]rdinary contract principles determine who is bound."[5]

"Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' [a court looks] first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement."[6]

**Whether a valid agreement to arbitrate exists**. The relied-upon option agreement

---

[2]Docket entry # 108, p. 4 & exh. 4.

[3]Docket entry # 108, p. 2.

[4]Docket entry # 108, p. 7.

[5]*Fleetwood Enterprises. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (internal citations omitted).

[6]*E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002) (citation omitted).

reflects two signatories: plaintiff GRN I and non-party L.K. & C.A. I, Ltd.[7] The option agreement contains an arbitration provision, but that provision does not indicate it applies to the Addington defendants or Target Strike. The Addington defendants maintain the option agreement's arbitration provision applies to Target Strike because Target Strike owns 56% of GRN I.[8] The Addington defendants' authorities[9] do not support that proposition.[10]

---

[7] Docket entry # 108, exh. 4.

[8] Docket entry # 123, p. 3.

[9] Docket entry # 108, p. 9.

[10] *See Washington Mut. Fin. Grp. v. Bailey*, 364 F.3d 260, 262 (5th Cir. 2004) (applying Mississippi law to determine "the effect of an individual's illiteracy on the enforcement of an arbitration agreement, which the individual admits he signed, but because of his illiteracy, denies he understood"). In this relied-upon opinion, the Fifth Circuit determined that a non-signatory to a contract requiring arbitration was estopped from denying she was bound to arbitrate her claims because she sued "based upon one part of a transaction that she [said] grant[ed] her rights while simultaneously attempting to avoid other parts of the same transaction that she view[ed] as a burden-namely, the arbitration agreement." *Bailey*, 364 F.3d at 268. Target Strike did not sue based upon one part of the option agreement granting it rights while simultaneously attempting to avoid the arbitration provision. Nothing indicates Target Strike "has consistently maintained that other provisions of the same contract should be enforced to [its] benefit. . . ." *Bailey*, 364 F.3d at 268. *See also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) (explaining that "[t]raditional principles of agency law may bind a nonsignatory to an arbitration agreement, " but finding that the plaintiff could not possibly be bound under an agency theory because the agreement containing the arbitration provision was entered into well before the plaintiff purchased the defendant; the defendant signed the agreement—the defendant did not sign the agreement. The Addington defendants did not explain why the Second Circuit's opinion controls this case, nor explain why Texas agency law binds Target Strike to an agreement signed by GRN I. *See also Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981) (determining that defendant produced sufficient evidence to raise a fact question about whether a non-party entered into the charter agreement containing the arbitration clause as agent for the signatory plaintiff); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex.2007) (stating that a "corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement" and explaining that "corporate affiliates are generally created to separate the businesses, liabilities, and contracts of each;" "a contract with one corporation—including a contract to arbitrate disputes—is generally not a contract with any other corporate affiliates").

The Addington defendants maintain the option agreement's arbitration provision applies to them because the plaintiffs alleged conspiracy. Because the plaintiffs alleged conspiracy, the Addington defendants assert that if one Addington defendant is a signatory to the option agreement, then ipso facto, the plaintiff have alleged substantially interdependent and concerted misconduct, estopping the plaintiffs from denying that the Addington defendants are entitled to compel arbitration.[11] This argument fails because no Addington defendant is a signatory to the option agreement. One of the Addington defendants' authorities explained why the argument fails: Texas courts "have never compelled arbitration based solely on substantially interdependent and concerted misconduct. . . ;" "[W]hile conspirators consent to accomplish an unlawful act, that does not mean they impliedly consent to each other's arbitration agreements."[12] Even if the plaintiffs alleged that non-party signatory L.K. & C.A. I, Ltd conspired with the Addington defendants, that does not mean that the Addington defendants impliedly consented to L.K. & C.A. I, Ltd's agreement to arbitrate or that GRN I agreed to arbitrate with alleged conspirators. In this case, the plaintiffs alleged that "All defendants have acted in combination to accomplish an unlawful purpose, namely to commit the torts and otherwise breach duties against TSI and GRN I . . ."[13]—they did not allege that "All defendants and L.K. & C.A. I, Ltd acted in combination to accomplish an unlawful purpose." The plaintiffs explained that background about the Double Mountain Project "is important because it explains how [defendants] Kost and Addington became familiar with the Target Forecasting technology, and ultimately about non-

---

[11]Docket entry # 123, p. 4.

[12]*In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191, 194 (Tex. 2007).

[13]Docket entry # 199, ¶ 67.

double Mountain areas of interests—which information was eventually misappropriated."[14]

The Addington defendants' reliance on *Grigson v. Creative Artists Agency L.L.C.*[15] fails. In *Grigson*, the Fifth Circuit limited equitable estoppel to "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."[16] Here, the plaintiffs did not allege substantially interdependent and concerted misconduct by both a nonsignatory and a signatory of the option agreement. Even if they had, the decision to use equitable estoppel falls within the district court's discretion.[17]

**Whether this dispute falls within the scope of the arbitration agreement**. The arbitration provision reads as follows:

> In the event of *any disputes arising out of or relating to this Option Agreement, or the breach thereof*, the parties agree to attend and be bound by arbitration. . . . The [previously agreed-to] arbiters have previously addressed issues involving GRN and its partners and have by Order of the court, continuing jurisdiction over any disputes related to the Double Mountain Project or *disputes by and between the parties*. . . . The arbiters may make all rulings as is just and necessary to carry out the purpose and intent of GRN, which is to explore potential for gold prospects in the Double Mountain Project.

This provision does not apply to the claims in this case because this case does not involve a dispute by and between the parties to the option agreement, nor is this case a "dispute[s] arising out of or relating to th[e] Option Agreement, or the breach thereof." GRN I did not name L.K. &

---

[14]Docket entry # 119, ¶ 32.

[15]210 F.3d 524 (5th Cir. 2000).

[16]*Grigson*, 210 F.3d at 527.

[17]*Grigson*, 210 F.3d at 528.

C.A. I, Ltd. as a defendant. In addition, the claims in this case do not involve the Double Mountain Project. In partial response to the motion to compel, the plaintiffs amended their complaint and clarified that they "are not advancing a claim in this lawsuit predicated upon what is generally described in earlier pleadings as the Double Mountain project."[18] As clarification, the plaintiffs pleaded the following:

> Thereafter, the parties focused on an area known as Double Mountain, in Elko County, Nevada, which area pertained to only 2 of GRN I's 16 areas of interest. Investors for the Double Mountain project included Lou Kost and Crandell Addington, through a company controlled by those defendants. The 2 areas of interest that comprised Double Mountain, the project that Lou Kost and Crandell Addington invested in, are not the subject of any legal claims made in this lawsuit. However, the background is important because it explains how Kost and Addington became familiar with the Target Forecasting technology, and ultimately about non-Double Mountain areas of interest—which information was eventually misappropriated.[19]

Notwithstanding the arguments set forth in the motion to compel, no serious argument exists that the option agreement between GRN I and L.K. & C.A. I, Ltd, requiring arbitration of disputes about the Double Mountain Project, is broad enough to cover the claims in this case. The claims against the Addington defendants do not arise out of or relating to this Option Agreement, or the breach thereof.[20]

---

[18]Docket entry # 111, ¶ 1.

[19]Docket entry # 119, ¶ 32.

[20]The claims against Al-Bassam are "predicated on his possession and current use of [Target Strike's] and GRN I's confidential, or trade secret, information regarding the location of mineable precious metals deposits. Docket entry # 119, ¶ 39. The misappropriation claim alleges the defendants "gained access to and possess [Target Strike's] and GRN I's confidential data through improper means" including "theft, misrepresentation, and breach or inducement of a breach to maintain secrecy or not to disclose a trade secret." *Id*. at ¶ 55. The unfair competition claim alleges that the defendants "have in effect stolen [Target Strike's] and GRN I's proprietary data and have unjustly enriched themselves as a result." *Id*. at ¶ 62. The conversion claim alleges that the

**Recommendation**.  Because the arbitration agreement does not apply to the parties or claims in dispute, I recommend denying the motion to compel arbitration (docket entry # 108). The Addington defendants' motion to strike Alex Weinberg's declaration (docket entry # 125) can be denied as moot because the district court can decide the motion to compel without referring to Weinberg's declaration.  The recommendation in this report is not based on Weinberg's declaration.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[21] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.

---

defendants "assumed and exercised dominion and control over [Target Strike's and GRN I's trade secrets and confidential and proprietary information] in an unlawful and unauthorized manner to the exclusion of and inconsistent with [Target Strike's] and GRN I's rights.  *Id*. at ¶ 63.   The unjust enrichment claim relies on Target Strike's and GRN I's "confidential and proprietary information, trade secrets, and research."  *Id*. at ¶ 65.  The conspiracy claim specifically mentions "known rights of confidentiality possessed by [Target Strike] and GRN I pursuant to their contracts with the Marston entities."  *Id*. at ¶ 67.  None of these claims mention the option agreement or the Double Mountain project.

[21] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[22]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[23]

**SIGNED** on October 26, 2010.

*[signature: Nancy Stein Nowak]*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[22]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[23]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).