## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TARGET STRIKE, INC. and | § | |
| GOLD RESOURCES OF | § | |
|   NEVADA, LLC(GRN I) | § | |
| | § | |
|      Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MARSTON & MARSTON, INC.; | § | SA-10-CV-0188 OLG (NN) |
| MARSTON ENVIRONMENTAL, INC.; | § | |
| CLIFFORD R. "KIP" WILLIAMS; | § | |
| WILLIAM J. HARTLEY; | § | |
| GOLD REEF INTERNATIONAL, INC.; | § | |
| GOLD REEF OF NEVADA, INC.; | § | |
| CRANDELL ADDINGTON; | § | |
| SADIK AL-BASSAM; | § | |
| RICHARD CRISSMAN CAPPS; | § | |
| LOU B. KOST, JR.; | § | |
| LOU KOST HOLDINGS, LTD.; | § | |
| WILLIAM SHAFFER; | § | |
| PAUL STROBEL; | § | |
| PANTHER RESOURCES, INC.; | § | |
| PANTHER RESOURCES | § | |
|   PARTNERS LLLP; | § | |
| ADDKO, INC.; | § | |
| TEXAS RESEARCH, LLC; | § | |
| L.K. & C.A., INC.; | § | |
| MEXIVADA MINING CORPORATION; | § | |
| OTHER UNKNOWN DEFENDANTS | § | |
|   ACTING IN CONCERT WITH THE | § | |
|   ABOVE NAMED DEFENDANTS, | § | |
| | § | |
|      Defendants. | § | |

*****************************************

| | | |
|---|---|---|
| CLIFFORD R. "KIP" WILLIAMS; | § | |
| RICHARD CRISSMAN CAPPS; | § | |
| WILLIAM SHAFFER; and | § | |
| PAUL STROBEL; | § | |
| | § | |
|      Counter-Plaintiffs, | § | |
| v. | § | |

|                                           |     |
|-------------------------------------------|-----|
|                                           | §   |
| **TARGET STRIKE, INC.; and**              | §   |
| **GOLD RESOURCES OF**                     | §   |
| **NEVADA, LLC (GRN I).**                  | §   |
|                                           | §   |
| **Counter-Defendants.**                   | §   |

**********************************************

|                                           |     |
|-------------------------------------------|-----|
| **WILLIAM J. HARTLEY,**                   | §   |
|                                           | §   |
| **Counter-Plaintiff,**                    | §   |
| **v.**                                    | §   |
|                                           | §   |
| **TARGET STRIKE, INC. and**               | §   |
| **GOLD RESOURCES OF NEVADA, INC.,**       | §   |
|                                           | §   |
| **Counter-Defendants.**                   | §   |

**********************************************

|                                                  |     |
|--------------------------------------------------|-----|
| **CRANDALL ADDINGTON;**                          | §   |
| **SADIK AL-BASSAM;**                             | §   |
| **LOU B. KOST, JR.;**                            | §   |
| **LOU KOST HOLDINGS, LTD.;**                     | §   |
| **RESURRECTION CANYON, INC., f/k/a**             | §   |
| **PANTHER RESOURCES, INC.;**                     | §   |
| **RESURRECTION CANYON, LLLP, f/k/a**             | §   |
| **PANTHER RESOURCES**                            | §   |
| **PARTNERS, LLLP;**                              | §   |
| **ADDKO, INC.;**                                 | §   |
| **TEXAS RESEARCH, LLC; and**                     | §   |
| **L.K. & C.A., INC.,**                           | §   |
|                                                  | §   |
| **Counter-Plaintiffs,**                          | §   |
| **v.**                                           | §   |
|                                                  | §   |
| **TARGET STRIKE, INC, and**                      | §   |
| **GOLD RESOURCES OF**                            | §   |
| **NEVADA, LLC (GRN I),**                         | §   |
|                                                  | §   |
| **Counter-Defendants.**                          | §   |

**********************************************

|                                           |     |
|-------------------------------------------|-----|
| **RESURRECTION CANYON, LLLP,**            | §   |
| **f/k/a PANTHER RESOURCES**               | §   |
| **PARTNERS, LLLP,**                       | §   |
|                                           | §   |
| **Counter-Plaintiff,**                    | §   |
| **v.**                                    | §   |

2

|  | § |
| --- | --- |
| **TARGET STRIKE, INC. and** | § |
| **GOLD RESOURCES OF NEVADA, LLC,** | § |
|  | § |
| **Counter-Defendants.** | § |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

|  | § |
| --- | --- |
| **CLIFFORD R. "KIP" WILLIAMS,** | § |
| **RICHARD CRISSMAN CAPPS,** | § |
| **WILLIAM SHAFFER and** | § |
| **PAUL STROBEL,** | § |
|  | § |
| **Counter-Plaintiffs,** | § |
|  | § |
| **v.** | § |
|  | § |
| **TARGET STRIKE, INC. and** | § |
| **GOLD RESOURCES OF NEVADA, LLC,** | § |
|  | § |
| **Counter-Defendants.** | § |

## **FOURTH REPORT AND RECOMMENDATION**

**TO:   Honorable Orlando Garcia**
**United States District Judge**

This report and recommendation addresses a motion filed by defendant Mexivada Mining

Corporation (Mexivada).[1]  In the motion, Mexivada asked the district court to do the following:

(1) dismiss the plaintiffs' claims for lack of jurisdiction;

(2) dismiss the plaintiffs' claims for lack of particularity;

(3) dismiss the claims for failing to state a claim upon which relief may be granted;

(4) dismiss the case for lack of venue; and

---

[1]Docket entry #s 60 & 61.

3

(5) dismiss the case as preempted by the Mining Act of 1872.[2]

To the extent Mexivada's arguments had merit at the outset of this case, the plaintiffs' second amended complaint cured any deficiencies requiring the court's intervention.[3]

**The issue of personal jurisdiction is not ripe**. Mexivada complains about the absence of personal jurisdiction.[4]  Mexivada argued that exercising personal jurisdiction under the Texas long-arm statute would violate due process, because the complaint alleges no tortious conduct by Mexivada in Texas.

A defendant may move to dismiss for lack of personal jurisdiction under Rule 12(b)(2).[5] Once a defendant challenges personal jurisdiction, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."[6]

The plaintiffs maintain the court has personal jurisdiction over Mexivada based on the commission of a tort in Texas.[7]

> In order for personal jurisdiction to satisfy Due Process requirements, a plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice."[8]

---

[2]Mexivada also included a motion for more definite statement in its motion, but set forth no argument about why the plaintiffs' should plead a more definite statement.

[3]Docket entry # 112.

[4]Docket entry # 61, pp. 13-15.

[5]Fed. R. Civ. P. 12(b)(2).

[6]*Gundle Lining Constr. Corp. v. Adams County Asphalt*, 85 F.3d 201, 204 (5th Cir. 1996).

[7]Docket entry # 119, ¶ 24.

[8]*Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citation omitted).

"A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts."[9]

The plaintiffs' second amended complaint includes facts alleging that Mexivada purposefully availed itself of Texas's benefits and protections by establishing minimum contacts with Texas, and indicating that the exercise of personal jurisdiction over Mexivada does not offend traditional notions of fair play and substantial justice.  About personal jurisdiction, the plaintiffs alleged the following:

> Mexivada is subject to personal jurisdiction in Texas based on its commission of a tort in Texas, which tortious conduct has caused substantial injury to a Texas resident in the state.  Mexivada has also entered into contracts with Texas residents—including a joint venture agreement with Gold Reef—under which performance in Texas was contemplated or required.  Mexivada hired or contracted with persons who had performed services for [plaintiffs] TSI and GRN I in Texas—a fact that ultimately highlights Mexivada's knowing involvement in the misappropriation of TSI's trade secrets in Texas.  Having caused injury to the plaintiffs in Texas, Mexivada has engaged in activity in the forum state that gives rise to specific jurisdiction here.  Moreover, upon information and belief, Mexivada is subject to general jurisdiction based on continuous and systematic contacts with or in Texas.[10]

To the extent Mexivada challenges the factual allegations, the plaintiffs and Mexivada agreed to conduct discovery on the question of personal jurisdiction,[11] and committed to advising the court about the results of such discovery.  Because the plaintiffs and Mexivada are exploring the basis for personal jurisdiction, Mexivada's motion to dismiss for lack of personal jurisdiction should

---

[9]*Moncrief Oil Int'l*, 481 F.3d at 311.

[10]Docket entry # 119, ¶ 24.

[11]Docket entry # 66.

be denied, subject to re-urging if discovery indicates no basis exists for exercising personal jurisdiction.

      **The plaintiffs have pleaded their claims with sufficient particularity**.  The plaintiffs brought five claims against Mexivada: (1) misappropriation of trade secrets and/proprietary data, (2) unfair competition, (3) conversion, (4) unjust enrichment, and (5) conspiracy.  Because it maintains the plaintiffs failed to plead conspiracy with sufficient particularity, Mexivada asked the district court to dismiss all of the plaintiffs' claims under Rule 9(b).[12]  That rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Mexivada relied on the Fifth Circuit's opinion in *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009).

      In *Grubbs*, the Fifth Circuit stated that "a complaint filed under the False Claims Act must meet the heightened pleading standard of Rule 9(b)."[13]  The court explained that "Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading" and "requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after *Twombly* must make relief plausible, not merely conceivable, when taken as true."[14]  Ultimately, the court concluded that "to plead with particularity the circumstances constituting fraud for a False Claims Act . . . claim, a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually

---

[12]Fed. R. Civ. P. 9(b).

[13]*Grubbs*, 565 F.3d at 185.

[14]*Grubbs*, 565 F.3d at 186.

submitted."[15]

*Grubbs's* reasoning in regard to claims under the False Claims Act does not apply to this case because this is not a False Claims Act case. To the extent Mexivada otherwise relies on Grubbs's instructions about Rule 9(b), the plaintiffs pleaded more than simple, concise, and direct allegations of the circumstances allegedly constituting fraud. Additionally, the plaintiffs allegations are plausible.

Specifically, the plaintiffs pleaded the following background about its claims against Mexivada:

> 40. . . . . With respect to Mexivada, that company staked claims in Nevada that one day earlier were held by the Gold Reef defendants, Shaffer, or other of the defendants herein—and these claims have a geographic identity with areas of interest discovered by TSI. The circumstances surrounding Mexivada's activities are so suspicious that it appears certain that that company is involved in a conspiracy with and in furtherance of all other defendants' tortious or otherwise wrongful conduct, including their misappropriation of TSI's and GRN I's trade secrets.

> 41. Mexivada boasts on its website that it "also controls the Opal Spring gold-uranium-molybdenum prospect in northeastern Nevada, adjoining and on strike with the Prince Uranium Mine property controlled by Gold Reef International. Gold Reef and Mexivada are jointly searching for a Joint Venture partner for the project areas." Opal Springs is adjacent to the Golden Trail/Texas Canyon/Gold Jackpot properties. Gold Reef's public statements evidence the nexus amongst Williams, Capps, Shaffer, the Gold Reef defendants, and Mexivada. These defendants were admittedly "jointly searching" for a "Joint Venture partner for the project areas"—project areas that were, again, originally identified by TSI and are the subject of this lawsuit. Mexivada was made aware of the project areas through Williams, Capps, Shaffer and the Gold Reef defendant, and was able to stake claims that were originally identified by TSI. Mexivada thus gained TSI's secret information from third persons with notice of the fact that it was a secret and that the third persons discovered it by improper means or that the third persons' disclosure of it was otherwise a breach of their duty to another. Mexivada knew or should have known that the information imparted to it was

---

[15]*Grubbs*, 565 F.3d at 190.

improperly misappropriated from TSI.  In this regard, Mexivada's website even acknowledges the existence of "[r]ock chip sampling in the Gold Jackpot area by Dr. Criss Capps [that] returned gold values of up to 1.282 ppm gold and local anomalous silver and arsenic values as well."  Capps, of course, worked for MEI/MMI under confidentiality terms favoring both TSI and GRN I.

42.  Mexivada nevertheless wrongfully conspired with the other defendants, and deliberately came into possession of information that was misappropriated from TSI and GRN.  Given the defendants' activities, it is believed that confidential information regarding TSI's 72 areas of interest has been compromised.  TSI therefore brings this action in an effort to recover, at a minimum, the value of information concerning areas of interest discovered by them—except for Double Mountain—that has been misappropriated.[16]

These allegations are very particular.  Even if Rule 9 required particularity in conspiracy claim,[17] there is no basis for dismissing based on a lack of particularity.

**The plaintiffs have stated claims upon which relief may be granted**.  Mexivada next complains that the plaintiffs have failed to state a claim upon which relief may be granted.[18] Mexivada maintains that the plaintiffs' claims do not state factual allegations showing a right to relief above speculation.

A defendant may ask the district court to dismiss a plaintiff's claims for failing to state a claim under Rule 12(b)(6).[19]

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  "Factual allegations

---

[16]Docket entry # 119.

[17]*See Hecht v. Commerce Clearing House*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy."); *Gubitosi v. Zegeye*, 946 F. Supp. 339, 346 n.4 (E.D. Pa. 1996) ("Fed. R. Civ. P. 9(b) does not require that allegations of conspiracy be alleged with particularity; only allegations of fraud have this requirement under the rule.").

[18]Docket entry # 61, pp. 9-13 & # 77, pp. 2-6.

[19]Fed. R. Civ. P. 12(b)(6).

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[20]

To the extent the plaintiffs' allegations failed to state a claim, the second amended complaint stated factual allegations showing a right to relief above speculation.  The previously quoted allegations contain sufficient factual matter (taken as true) to raise a reasonable hope or expectation that discovery will reveal relevant evidence of each element of a claim.[21]

In addition, the plaintiffs pleaded the elements of their claims against Mexivada.  As for misappropriation of trade secrets and/or proprietary data, the plaintiffs alleged that Mexivada obtained TSI's secret information from third persons with notice of the fact that the information was a secret and used TSI's secret information to stake claims with geographic identity with areas of interest discovered by TSI.[22]  As for unfair competition, the plaintiffs alleged that Mexivada in effect stole the plaintiffs' proprietary data and unjustly enriched itself as a result.[23]

---

[20]*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

[21]*See Lormand v. US Unwired*, 565 F.3d 228, 257 (5th Cir. 2009) "The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.").

[22]*See Taco Cabana Int'l. v. Two Pesos*, 932 F.2d 1113, 1123 (5th Cir. 1991) ("A trade secret misappropriation in Texas requires: (a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret; (c) use of the trade secret; and (d) damages.").

[23]*See U.S. Sporting Products v. Johnny Stewart Game Calls*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied) )after explaining that misappropriation is a form of unfair competition, stating the elements as "(I) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition ( i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff").

As for conversion, the plaintiffs alleged that Mexivada assumed and exercised dominion and control over the plaintiffs' proprietary data in an unlawful and unauthorized manner to the exclusion of and inconsistent with the plaintiffs' rights, causing the plaintiffs damage. The plaintiffs conceded[24] that "Texas conversion law 'concerns only physical property,'" such that no cause of action lies as to trade secrets,[25] but to the extent that the plaintiffs can prove their claim based on tangible property—maps, reports, etc.—the plaintiffs should be permitted to pursue the claim. As for unjust enrichment, rather than a cause of action, unjust enrichment is a theory of recovery.[26] "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits."[27] The court can construe the second amended complaint as including unjust enrichment as a remedy rather than a cause of action. Finally, as to conspiracy, no question exists the plaintiffs stated a claim.[28] To the extent Mexivada's argument is based on the plaintiffs' initial characterization of their case as one

---

[24]Docket entry # 67, p. 14.

[25]*Xpel Technologies Corp. v. Am. Filter Film Distributors*, No. SA-08-CA-175-XR, 2008 WL 3540345, at * 5 (W.D. Tex. Aug. 11, 2008).

[26]*See Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."); *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 731 (Tex. App.—Fort Worth 2008, , pet. dis'm) ("[A] party may recover under the theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the other taking of an undue advantage.").

[27]*Villarreal v. Grant Geophysical*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied).

[28]*See Tri v. J.T.T.*,162 S.W.3d 552, 556 (Tex. 2005) ("restating the elements of civil conspiracy as follows: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result").

involving "claims jumping," the second amended complaint characterized the case as one

involving stolen trade secrets.[29]  No basis exists for dismissing the plaintiffs' claims for failing to

state a claim.

**The issue of venue is not yet ripe**.  Mexivada asked the court to dismiss this case for

lack of venue.[30]  Mexivada argued that venue is lacking because all issues arising in this case

relate to mining claims located in Nevada.  A defendant may ask a court to dismiss a case for

improper venue under Rule 12(b)(3).   Since the motion was filed, Mexivada and the plaintiffs

have agreed the issue of venue is not yet ripe and is subject to determination once discovery

about personal jurisdiction is complete.[31]   This aspect of Mexivada's motion is best denied,

subject to re-urging after discovery.

**The Mining Act does not preempt the plaintiffs' claims**.  Without explaining why,

Mexivada asserted that the Mining Act of 1872 preempts the plaintiffs' state law claims.[32]  The

Mining Act provides that "all valuable mineral deposits in lands belonging to the United States,

both surveyed and unsurveyed, shall be free and open to exploration and purchase . . . ."[33]

The plaintiffs' state law claims do not implicate this statute.  The authorities cited in

---

[29]Docket entry # 119, ¶ 25.

[30]Docket entry # 61, pp. 15-16.

[31]Docket entry # 67, p. (asserting that the determination of proper venue is unripe pursuant to the parties' agreement to conduct pretrial discovery) & 77, p. 6 (stating that the court should reserve ruling until the completion of discovery on the matter of jurisdiction).

[32]Docket entry # 61, pp. 16-17.

[33]30 U.S.C. § 22.

Mexivada's motion do not suggest preemption.[34]  Mexivada's argument is so lacking in legal basis as to warrant a warning under Rule 11.[35]  Mexivada cited no existing law suggesting preemption of the plaintiffs' state law claims and made no argument for extending, modifying, or reversing existing law or for establishing new law that would preempt the plaintiffs' state law claims.  The Mining Act provides no basis for dismissing the plaintiffs' claims.

**Recommendation**.  For the reasons set forth above, I recommend denying Mexivada's motion (docket entry #s 60 & 61).  I also recommend warning Mexivada and its attorneys about Rule 11's requirements and a warning about the consequences of violating Rule 11.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days

---

[34]*See Cal. Coastal Comm'n v. Granite Rock Co*., 480 U.S. 572, 580 (1987) (stating that the Property Clause does not automatically conflict with all state regulation of federal land and explaining that a state may enforce its laws on federal land so long as state law does not conflict with federal law); *United States v. Coleman*, 390 U.S. 599, 602 (1968) (determining that the Department of Interior's determination that the quartzite deposits did not qualify as valuable mineral deposits because the stone could not be marketed for profit did not offend the Mining Act); *S.D. Mining Ass'n v. Lawrence County*, 155 F.3d 1005, 1011 (8th Cir. 1998) (determining that a local ordinance banning mining on federal land undermined the purpose and objectives of the Mining Act); *United States v. Curtis-Nevada Mines*, 611 F.2d 1277, 1279 (9th Cir. 1980) (considering "whether the owner of unpatented mining claims ha[d] the right to exclude members of the general public from such use of the surface of the land for recreational purposes or access to other public lands unless they ha[d] obtained a specific governmental permit or license for such use").

[35]*See* Fed. R. Civ. P. 11 (requiring an attorney to certify that to the best of the attorney's knowledge, information, and belief, arguments set forth in a pleading "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and providing for sanctions after notice and an opportunity to respond).

after being served with a copy of same, unless this time period is modified by the district court.[36]

Such party shall file the objections with the clerk of the court, and serve the objections on all

other parties and the magistrate judge.  A party filing objections must specifically identify those

findings, conclusions or recommendations to which objections are being made and the basis for

such objections; the district court need not consider frivolous, conclusive or general objections.

A party's failure to file written objections to the proposed findings, conclusions and

recommendations contained in this report shall bar the party from a *de novo* determination by the

district court.[37]   Additionally, failure to file timely written objections to the proposed findings,

conclusions and recommendations contained in this report and recommendation shall bar the

aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.[38]

   **SIGNED** on October 27, 2010.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[36]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[37]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[38]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

13