# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| **TARGET STRIKE, INC.,** | § | |
| | § | |
| | § | **CIVIL ACTION NO.** |
| **Plaintiff,** | § | |
| | § | **SA-10-CV-0188-OLG (NN)** |
| **v.** | § | |
| | § | |
| **MARSTON & MARSTON, INC.;** | § | |
| **MARSTON ENVIRONMENTAL, INC.;** | § | |
| **CLIFFORD R. "KIP" WILLIAMS;** | § | |
| **WILLIAM J. HARTLEY;** | § | |
| **GOLD REEF INTERNATIONAL, INC.;** | § | |
| **GOLD REEF OF NEVADA, INC.;** | § | |
| **CRANDELL ADDINGTON;** | § | |
| **SADIK AL-BASSAM;** | § | |
| **RICHARD CRISSMAN CAPPS;** | § | |
| **LOU B. KOST, JR.;** | § | |
| **LOU KOST HOLDINGS, LTD.;** | § | |
| **WILLIAM SHAFFER;** | § | |
| **PAUL STROBEL;** | § | |
| **PANTHER RESOURCES, INC.;** | § | |
| **PANTHER RESOURCES** | § | |
| **    PARTNERS LLLP;** | § | |
| **ADDKO, INC.;** | § | |
| **TEXAS RESEARCH, LLC;** | § | |
| **L.K. & C.A., INC.;** | § | |
| **MEXIVADA MINING CORPORATION;** | § | |
| **OTHER UNKNOWN DEFENDANTS** | § | |
| **    ACTING IN CONCERT WITH THE** | § | |
| **    ABOVE NAMED DEFENDANTS,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | § |
| | § |
| | § |
| **CLIFFORD R. "KIP" WILLIAMS;** | § |
| **RICHARD CRISSMAN CAPPS;** | § |

WILLIAM SHAFFER; and                  §
PAUL STROBEL;                         §
                                      §
                  Counter-Plaintiffs, §
                                      §
v.                                    §
                                      §
TARGET STRIKE, INC.; and              §
GOLD RESOURCES OF                     §
    NEVADA, LLC (GRN I).              §
                                      §
                  Counter-Defendants. §
                                      §
                                      §
*****************************************
                                      §
                                      §
WILLIAM J. HARTLEY,                   §
                                      §
                  Counter-Plaintiff,  §
                                      §
v.                                    §
                                      §
TARGET STRIKE, INC. and               §
GOLD RESOURCES OF                     §
    NEVADA, LLC (GRN I).              §
                                      §
                  Counter-Defendants. §
                                      §
                                      §
*****************************************
                                      §
                                      §
CRANDALL ADDINGTON;                   §
SADIK AL-BASSAM;                      §
LOU B. KOST, JR.;                     §
LOU KOST HOLDINGS, LTD.;              §
RESURRECTION CANYON, INC., f/k/a      §
    PANTHER RESOURCES, INC.;          §
RESURRECTION CANYON, LLLP, f/k/a      §
    PANTHER RESOURCES                 §
    PARTNERS, LLLP;                   §
ADDKO, INC.;                          §

2

**TEXAS RESEARCH, LLC; and**
**L.K. & C.A., INC.,**

                  **Counter-Plaintiffs,**

**v.**

**TARGET STRIKE, INC, and**
**GOLD RESOURCES OF**
    **NEVADA, LLC (GRN I),**

                  **Counter-Defendants.**

§
§
§
§
§
§
§
§
§
§
§
§
§
§

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**RESURRECTION CANYON, LLLP, f/k/a**
    **PANTHER RESOURCES**
    **PARTNERS, LLLP,**

                  **Counter-Plaintiff,**

**v.**

**TARGET STRIKE, INC. and**
**GOLD RESOURCES OF**
    **NEVADA, LLC (GRN I),**

                  **Counter-Defendants.**

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CLIFFORD R. "KIP" WILLIAMS,**
**RICHARD CRISSMAN CAPPS,**
**WILLIAM SHAFFER and**
**PAUL STROBEL,**

                  **Counter-Plaintiffs,**

**v.**

§
§
§
§
§
§
§
§
§
§
§

3

|  |  |
|---|---|
| **TARGET STRIKE, INC. and** | § |
| **GOLD RESOURCES OF** | § |
| **NEVADA, LLC (GRN I),** | § |
|  | § |
|  | § |
| **Counter-Defendants.** | § |
|  | § |
|  | § |

## SEVENTH REPORT AND RECOMMENDATION

**TO:    Honorable Orlando Garcia**
**United States District Judge**

This report and recommendation addresses the pending motion to exclude the report and testimony of the plaintiff's designated expert — Behre Dolbear.  I have jurisdiction to enter this report under 28 U.S.C. § 636(b) and the district court's order referring pretrial motions to me.[1] Because the resolution of the motion may be dispositive of the plaintiff's case — as to injury and damages — I treated the motion as dispositive.  After considering the motion, the response, and the reply,[2] I recommend granting the motion.

**This case is a lawsuit about alleged misappropriated trade secrets.**  According to plaintiff Target Strike, Inc. (Target Strike),[3] its technology — Target Forecasting (TF) — identified 72 areas of potentially minable precious minerals in Nevada.  Purportedly, TF substantially reduces the time and cost to conduct regional reconnaissance and sampling

---

[1]Docket entry # 38.

[2]*See* docket entry #s 194, 224, & 232.

[3]Initially, there were two plaintiffs in this case.  Recently, the second plaintiff — Gold Resources of Nevada, LLC — non-suited its claims.  *See* docket entry # 240 (non-suiting Gold Resources of Nevada, LLC; district court advised in Sixth Report and Recommendation).

programs by identifying specific target areas with a high correlation to known deposits.[4]  Target

Strike once contracted with defendants Marston & Marston, Inc. and Marston Environmental,

Inc. (together, Marston) to aid in the development of the areas of interest.  Target Strike contends

Marston, along with other defendants, stole the locations of the areas of potential interest for

development for monetary gain.  Target Strike pleaded nine causes of action, seeking damages

and injunctive relief.[5]

     **Marston moved to strike Target Strike's expert witnesses.**  Target Strike designated

three expert witnesses — all affiliated with Behre Dolbear & Company, Inc. — Bernard J.

Guarnera, Michael Roy Fitzsimonds, and Joseph A. Kantor (collectively, Behre Dolbear).[6]

Guarnera has over 40 years of experience in the international mining industry and is the president

and chairman of the Behre Dolbear Group.[7]  Additionally, he has previously provided expert

testimony on three occasions.[8]  Fitzsimonds is an associate of Behre Dolbear with over 25 years

of mineral industry experience.[9]  Fitzsimonds has a diverse background in the mining industry,

having worked in a number of capacities — including "database design, geostatistics" and the

---

[4]Docket entry # 21, ex. A, p. 320 (deposition testimony by Target Strike's corporate representative, Alex Weinberg).

[5]Docket entry # 119.  Target Strike withdrew its tenth cause of action.  *See* docket entry # 212.

[6]Docket entry # 133.  The designation was on behalf of both initial plaintiffs, but because Gold Resources of Nevada non-suited its claims, this report refers to the designation as to only Target Strike.

[7]Docket entry # 194, ex. 1, app. 1, p. 2.

[8]Docket entry # 194, ex. 1, p. A1-4.

[9]Docket entry # 194, ex. 1, p. A1-5.

implementation of computer hardware and software.[10]  Kantor is an economic geologist with

"over 30 years of experience in all phases of precious and base metal exploration."[11]  Target

Strike designated these experts to testify about its injury and damages.[12]  The designation

includes a report detailing the expert opinions.[13]

Marston moved to exclude the report and each expert's testimony on the grounds that: (1)

the experts do not opine on a disputed fact issue, (2) the report is flawed by an analytical gap,

and, (3) in the alternative, the testimony of witnesses Fitzsimonds and Kantor is needlessly

cumulative.[14]  Although the applicable pleadings are sealed, I did not seal this report because it

does not specifically refer to confidential matters.

**Expert testimony must be reliable and relevant to be admissible.**[15]  The party offering

expert testimony must prove its admissibility by a preponderance of the evidence.[16]  Thus, Target

Strike must show the testimony and accompanying report are relevant, reliable, and the product

---

[10]Docket entry # 194, ex. 1, p. A1-5–A1-7.

[11]Docket entry # 194, ex. 1, p. A1-9.

[12]Docket entry # 133.

[13]Docket entry # 133.  *See* Fed. R. Civ. P. 26(a)(2)(B) & (e) (requiring a party who designates an expert witness to submit a written report prepared and signed by the expert, stating all opinions the expert will express and the basis and reasons for the opinions).

[14]Docket entry # 194.

[15]*Am. Home Assur. Co. v. Cat Tech,* 717 F. Supp. 2d 672, 681 (S.D. Tex. 2010).

[16]*Mathis v. Exxon,* 302 F.3d 448, 459–60 (5th Cir. 2002); *Moore v. Ashland Chem.,* 151 F.3d 269, 276 (5th Cir. 1998).  *See Bocanegra v. Vicmar Services*, 320 F.3d 581, 585 (5th Cir. 2003) ("The party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are reliable, but need not show that the expert's findings and conclusions are correct.").

of a sufficiently qualified expert.  For a witness to be qualified, the expert must have sufficient knowledge, skill, training, education, or experience to assist the trier of fact.[17]  To be relevant, the testimony must be helpful in determining an issue in question, something beyond the knowledge of the average juror.[18]  Irrelevant evidence is inadmissible, while relevant evidence is generally admissible.[19]  Evidence that has "too great an analytical gap" with the underlying data is unhelpful to a juror and thus irrelevant.[20]  Reliability has no specific test; instead, a set of criteria serves as a guideline for reliability determinations.[21]  Even when a party has shown the qualified testimony and accompanying report is reliable and relevant, the evidence can still be excluded as needlessly cumulative.[22]  Marston has the burden of showing that the testimony of Kantor and

---

[17]Fed. R. Evid. 702.  *See Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 176-77 (5th Cir. 1990) (holding the absence of personal experience with the particular equipment to be relevant but not determinative of admissibility).

[18]Fed. R. Evid. 401; Fed. R. Evid. 702.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) ("The trial court had to decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case.") (internal citations omitted); *Eiland v. Westinghouse Elec. Corp*., 58 F.3d 176, 180 (5th Cir. 1995) ("Expert opinion testimony is admissible if it is helpful to the jury in understanding the evidence or determining a fact in issue.").

[19]Fed. R. Evid. 402.  *See also* Fed. R. Evid. 403 (listing grounds for excluding otherwise relevant evidence).

[20]*See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

[21]*Kumho Tire*, 526 U.S. at 141 ("[A]s the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily or exclusively applies to all experts or in every case.").

[22]Fed. R. Evid. 403.

Fitzsimonds is needlessly cumulative.[23]

**Behre Dolbear's report is not relevant to a fact in issue**.  Marston maintained Behre Dolbear's report is not relevant because it does not address a fact in issue; namely, because the report does not analyze the costs avoided using TF.[24]  Marston complained that the report analyzes the costs of sampling and developing a target area *after* the initial identification of a site, although the costs to develop a target area following identification are the same under the TF approach or the conventional approach to mining.[25]  Marston claimed the relevant question is the "cost to generate the prospect area from scratch."[26]  Marston argued Behre Dolbear's report does not address any disputed issue because it calculates the costs of conventional exploration.

The key to determining relevancy is knowing the purpose of the offered evidence.[27] Evidence is relevant when it has any tendency to make the existence of any material fact more or less probable.[28]  The purpose of Target Strike's expert report and testimony is to prove Target Strike's injury and damages.  Thus, Behre Dolbear's report must make Target Strike's injury and damages more or less probable.

Target Strike's injury and damages flowed from the defendants' alleged misappropriation

---

[23]Fed. R. Evid. 403. *See* Fed. R. Evid. 104(b) (conditioning relevancy on the sufficiency of condition of fact).

[24]Docket entry # 194, p. 4.

[25]Docket entry # 193, p. 6.

[26]Docket entry # 194, p. 10.

[27]*See Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

[28]*See* Fed. R. Evid. 401 (requiring only a tendency to prove a material fact).

of the location of Target Strike's areas of interest — areas of interest identified using TF. According to Target Strike, its TF technology reduces the time and cost of identifying areas with a potential for discovering minerals; relevant here, for discovering gold.  Target Strike's damages are measured by the costs a company exploring for gold in Nevada would avoid using TF technology as opposed to the costs of using conventional exploration methods to preliminarily identify promising prospects for discovering gold.[29]  Behre Dolbear's report and testimony are not required to prove Target Strike's case by itself, but they must make Target Strike's damages estimate more or less probable.[30]

To prove relevancy, Target Strike relied on avoided costs as first identified by defendant Clifford R. "Kip" Williams.[31]  At some point during Target Strike's business relationship with Marston, Williams purportedly estimated avoided costs for 16 of Target Strike's 72 areas of interest.  In Williams's estimate, using TF to identify target areas for mineral exploration saved $42,000 to $70,000 per area of interest.[32]  Behre Dolbear used the estimate to calculate avoided

---

[29]Docket entry # 224, p. 4.

[30]*See Tuscaloosa v. Harcros Chemicals*, 158 F.3d 548, 565–66 (11th Cir. 1998) (finding abuse of discretion where trial court excluded expert testimony because it did not prove conspiracy, stating the data and report "need not show a successful conspiracy to satisfy Rule 702 as circumstantial evidence of conspiracy.").

[31]Docket entry # 224, p. 2.  *See also Morris v. Liberty Mut. Ins. Co.*, No. 08-4247, 2011 WL 317741, at * 3 (E.D. La. Jan. 31, 2011) (admitting plaintiff's expert testimony over defendants' motion to exclude, finding the evidence would assist the trier of fact by providing a potential framework to calculate damages).

[32]Docket entry # 224, ex. A, p. 4 (document titled "Conventional Exploration Compared to Target Forecasting").

costs for the remaining areas of interest and to arrive at Target Strike's damages.[33]

Target Strike characterized Williams's estimate as a party admission and offered no other explanation about why the estimate is reliable.  An admission, however, does not make a damage estimate reliable.  Williams's estimate does not explain the basis for the stated savings.  Unsupported, Williams's estimate of avoided costs is unreliable.

Although Behre Dolbear's report purports to opine about "costs a company exploring for gold in Nevada would avoid by utilizing the technology developed by Target Strike,"[34] Behre Dolbear's experts contradicted the opinion, first by testifying that the costs calculated would be incurred under the conventional method of exploration as well as the TF method, and then by stating that they did not calculate the cost of identifying a target area.[35]  Instead, Behre Dolbear assumed targets were already identified.[36]  This assumption shows that the resulting damage calculation does not address a disputed issue, because the report and testimony do not address the costs of identifying promising prospects.  Instead, the report and the testimony address costs to further develop target areas.  Because the report addresses further development — rather than identification — of areas of interest, and because it does not address the costs avoided using TF to explore for gold in Nevada, the report does not provide a proper measurement for Target

---

[33]Docket entry # 194, ex. 1, p. 5 & ex. 7, p. 178.

[34]Docket entry # 194, ex. 1, p. 1.

[35]Docket entry # 194, ex. 3 pp. 58 & 91-92 (Kantor deposition) & ex. 6, p. 41 (Fitzsimonds deposition).

[36]Docket entry # 194.

Strike's damages.[37]  Without a measure of damages based on the costs avoided by having

predetermined target areas, the costs to further develop the target area do not provide a proper

framework for measuring Target Strike's damages.  The report and testimony do not make Target

Strike's estimate of its damages more or less probable because they fail to measure how much the

defendants purportedly saved by misappropriating the locations from Target Strike rather than

using conventional exploration technology to identify promising prospects.  Because they fail to

address a fact in issue, the report and testimony should be excluded.

**Behre Dolbear's report contains a fatal analytical gap**.  Marston did not challenge

Behre Dolbear's methodology, but argued that Behre Dolbear made an illogical leap between the

costs of developing a target conventionally and the costs avoided by using TF.[38]  Marston

complained about an unsupported damages measure, a calculation refuted by the experts'

testimony.

Reliance on incorrect or inaccurate information makes an expert's report and testimony

inadmissible because it does not help the jury and will likely confuse or mislead the jury.[39]

Under the standards set forth by the Supreme Court in *Joiner* and *Kumho*, the expert testimony

must "fit" the issues of the case.[40]  Although "[q]uestions relating to the bases and sources of an

---

[37]Docket entry # 224, p. 2 (Target Strike's assessment of its measure of damages).

[38]Docket entry # 194, p. 6.

[39]*Moore*, 151 F.3d at 275 (opining that incorrect assumptions critical to an expert's opinion make that opinion unreliable).

[40]*Kumho Tire Co*., 526 U.S. at 157 (relying on *Joiner's* explanation that neither *Daubert* nor the Federal Rules of Evidence requires a district court "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Joiner*, 522 U.S. at 152 (J. Stevens, concurring in part & dissenting in part) (reiterating *Daubert's* guidance that expert

expert's opinion go to weight, not admissibility,"[41] the *Joiner* Court affirmed the exclusion of expert opinions linked to the data only by an expert's assertion without any other proof.[42]

Behre Dolbear's calculation of avoided costs is based on Williams's assertion without any other proof. The report details the costs of exploring a target area *following* identification, although purporting to detail the costs avoided by using TF to identify and preliminarily explore a target area. The report states that $26 million to $30 million in exploration costs would be avoided by using the target areas generated by TF, but does not explain that savings. Instead, Behre Dolbear accepted Williams's unsupported estimate. For example, Williams's estimate about the 16 areas of interest lists several criteria for determining costs avoided, including a cost labeled "Target Generation."[43] The report does not define "Target Generation," or describe the method of generating such cost or any other number presented in Williams's statement.

Behre Dolbear's damages measure was refuted by the experts' deposition testimony, explaining that most costs included in the calculation would be incurred under either the TF method or the conventional method.[44] Behre Dolbear assumed that Williams's estimates were correct without any analysis and without deducting any overlap between the two methods. The

---

testimony that does not fit the facts of a case is inadmissible).

[41]*United States v. 14.38 Acres of Land, More or Less in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

[42]*Joiner*, 522 U.S. at 146.

[43]Docket entry # 224, ex. A, p. 4.

[44]*See* docket entry # 194, exs. 3, 6, & 7 (containing the pertinent portions of the Behre Dolbear experts' testimony during deposition).

assumption resulted in an insufficient nexus between the costs avoided using TF and those listed in the report.  The gap between these costs renders Behre Dolbear's report unreliable.

**I recommend granting the motion to exclude Behre Dolbear's report and the testimony of Target Strike's experts (docket entry # 194).**  To be admissible, Behre Dolbear's report and expert testimony must be relevant and reliable.  The report, however, provides an incorrect measure of damages which is irrelevant to any fact in issue.  Furthermore, the report makes an unsupported leap from Williams's estimate of avoided costs to the figures used to measure damages.  Because my recommendation is based on this reasoning, I did not consider Marston's argument about the cumulative nature of the testimony of Fitzsimonds and Kantor.[45] If the district court does not accept the recommendation for the reasons discussed herein, I will prepare a supplemental report discussing Marston's argument regarding cumulative testimony.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[46] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for

---

[45]Docket entry # 194, p. 9.

[46]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[47]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[48]

**SIGNED** on March 24, 2011.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[47]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[48]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).