# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **TARGET STRIKE, INC.,** | § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| v. | § § § | SA-10-CV-0188-OLG (NN) |
| **MARSTON & MARSTON, INC.;** <br> **MARSTON ENVIRONMENTAL, INC.;** <br> **CLIFFORD R. "KIP" WILLIAMS;** <br> **WILLIAM J. HARTLEY;** <br> **GOLD REEF INTERNATIONAL, INC.;** <br> **GOLD REEF OF NEVADA, INC.;** <br> **CRANDELL ADDINGTON;** <br> **SADIK AL-BASSAM;** <br> **RICHARD CRISSMAN CAPPS;** <br> **LOU B. KOST, JR.;** <br> **LOU KOST HOLDINGS, LTD.;** <br> **WILLIAM SHAFFER;** <br> **PAUL STROBEL;** <br> **PANTHER RESOURCES, INC.;** <br> **PANTHER RESOURCES** <br>   **PARTNERS LLLP;** <br> **ADDKO, INC.;** <br> **TEXAS RESEARCH, LLC;** <br> **L.K. & C.A., INC.;** <br> **MEXIVADA MINING CORPORATION;** <br> **OTHER UNKNOWN DEFENDANTS** <br>   **ACTING IN CONCERT WITH THE** <br>   **ABOVE NAMED DEFENDANTS,** | § § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| | § § § |
| **CLIFFORD R. "KIP" WILLIAMS;** <br> **RICHARD CRISSMAN CAPPS;** | § § |

| | |
|---|---|
| **WILLIAM SHAFFER; and** | § |
| **PAUL STROBEL;** | § |
| | § |
| Counter-Plaintiffs, | § |
| | § |
| | § |
| v. | § |
| | § |
| **TARGET STRIKE, INC.; and** | § |
| **GOLD RESOURCES OF** | § |
|    **NEVADA, LLC (GRN I).** | § |
| | § |
| Counter-Defendants. | § |
| | § |
| | § |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| | § |
| | § |
| **WILLIAM J. HARTLEY,** | § |
| | § |
| Counter-Plaintiff, | § |
| | § |
| v. | § |
| | § |
| **TARGET STRIKE, INC. and** | § |
| **GOLD RESOURCES OF** | § |
|    **NEVADA, LLC (GRN I).** | § |
| | § |
| Counter-Defendants. | § |
| | § |
| | § |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| | § |
| | § |
| **CRANDALL ADDINGTON;** | § |
| **SADIK AL-BASSAM;** | § |
| **LOU B. KOST, JR.;** | § |
| **LOU KOST HOLDINGS, LTD.;** | § |
| **RESURRECTION CANYON, INC., f/k/a** | § |
|    **PANTHER RESOURCES, INC.;** | § |
| **RESURRECTION CANYON, LLLP, f/k/a** | § |
|    **PANTHER RESOURCES** | § |
|    **PARTNERS, LLLP;** | § |
| **ADDKO, INC.;** | § |

| | |
|---|---|
| **TEXAS RESEARCH, LLC; and**<br>**L.K. & C.A., INC.,** | §<br>§<br>§ |
| Counter-Plaintiffs, | §<br>§ |
| v. | §<br>§ |
| **TARGET STRIKE, INC, and**<br>**GOLD RESOURCES OF**<br>   **NEVADA, LLC (GRN I),** | §<br>§<br>§<br>§ |
| Counter-Defendants. | §<br>§<br>§ |

*******************************************

| | |
|---|---|
| | §<br>§ |
| **RESURRECTION CANYON, LLLP, f/k/a**<br>   **PANTHER RESOURCES**<br>   **PARTNERS, LLLP,** | §<br>§<br>§<br>§ |
| Counter-Plaintiff, | §<br>§ |
| v. | §<br>§ |
| **TARGET STRIKE, INC. and**<br>**GOLD RESOURCES OF**<br>   **NEVADA, LLC (GRN I),** | §<br>§<br>§<br>§ |
| Counter-Defendants. | §<br>§<br>§ |

*******************************************

| | |
|---|---|
| | §<br>§ |
| **CLIFFORD R. "KIP" WILLIAMS,**<br>**RICHARD CRISSMAN CAPPS**,<br>**WILLIAM SHAFFER and**<br>**PAUL STROBEL,** | §<br>§<br>§<br>§ |
| Counter-Plaintiffs, | §<br>§<br>§ |
| v. | § |

| | § |
|---|---|
| **TARGET STRIKE, INC. and** | § |
| **GOLD RESOURCES OF** | § |
|    **NEVADA, LLC (GRN I),** | § |
| | § |
| | § |
|            **Counter-Defendants.** | § |

## EIGHTH REPORT AND RECOMMENDATION

**TO:**    Honorable Orlando Garcia
         United States District Judge

This report and recommendation addresses a pending motion for summary judgment — the motion filed by defendants Texas Research, LLC; Kost Holdings, Ltd.; ADDKO, Inc.; and L.K. & C.A., Inc.[1] These defendants are part of a group of defendants the parties characterize as "the Addington defendants." The Addington defendants include the following individuals and business entities:

    a.     Crandell Addington,[2]

    b.     Lou B. Kost, Jr.,[3]

    c.     Sadik Al-Bassam,[4]

    d.     Resurrection Canyon, Inc., formerly known as Panther Resources, Inc.,

---

[1] Docket entry # 202.

[2] Crandell Addington is a shareholder in defendants L.K. & C.A., Inc. and Gold Reef of Nevada. Addington was once a professional gambler.

[3] Lou B. Kost, Jr. is also a shareholder in L.K. & C.A., Inc. and Gold Reef of Nevada. Kost and Addington have been friends for many years. Like Addington, Kost was once a professional gambler.

[4] Sadik Al-Bassam is a friend of Addington and Kost. Al-Bassam invested in a business venture discussed in this report.

  e.  Resurrection Canyon, LLLP, formerly known as Panther Resources Partners, LLLP,

  f.  Texas Research, LLC,

  g.  Kost Holdings, Ltd.,

  h.  ADDKO, Inc., and

  I.  L.K. & C.A., Inc.

All of the Addington defendants moved for summary judgment,[5] but this report addresses only the motion filed by Texas Research, LLC; Kost Holdings, Ltd.; ADDKO, Inc.; and L.K. & C.A., Inc. (together, the corporate Addington defendants). The summary-judgment evidence was filed under seal, but I did not seal this report because it does not specifically refer to confidential matters.

  The corporate Addington defendants were formed by Addington and/or Kost. According to Kost's deposition, Kost and Addington create corporate entities for prospective business ventures.[6] Texas Research, LLC is a Wyoming limited partnership, comprised of Addington, Addington's son, Kost and Kost Holdings. Texas Research once held shares in defendant Gold Reef International, obtained as a result of a reverse merger between defendant Gold Reef of Nevada, Inc. and a Canadian company, OMG.[7] Kost Holdings, Ltd., is a Texas limited liability partnership, and a member of Texas Research, LLC. ADDKO, Inc. is a Nevada corporation. L.K. & C.A., Inc. is a Texas corporation. The corporation invested $375,000 to explore former-

---

[5]*See* docket entry #s 181, 200, 201 & 202.

[6]Docket entry # 211, ex. F, pp. 76 & 115.

[7]Docket entry # 211, ex. E, pp. 170-74 & ex. F-1.

5

plaintiff Gold Resources of Nevada's (GRN I's) Double Mountain project.

**Plaintiff Target Strike's claims**. Target Strike brought five claims against the corporate Addington defendants: (1) misappropriation of trade secrets, (2) unfair competition, (3) conversion, (4) unjust enrichment, and (5) conspiracy.[8] Target Strike's claims against the corporate Addington defendants are pleaded generally; that is, the claims are pleaded against all defendants. No specific allegation of wrongdoing is attributed to a corporate Addington defendant.

Target Strike contends the Addington defendants obtained a map reflecting 72 areas of mineral interest identified by Target Strike's technology — Target Forecasting (TF) — as well as reports about those areas of interest.[9] According to Target Strike, the locations of the areas of interest is confidential. Target Strike's claims flow from the alleged misappropriation of the locations of TF-identified areas of interest.

Target Strike's theory of liability is based on the close proximity of areas of interest reflected on the complained-about map to locations of claims staked on behalf of the Addington defendants.[10] Because seven staked claims are purportedly "virtually identical" to locations on the complained-about map,[11] Target Strike contends the claims would not have been staked

---

[8] Docket entry # 119, ¶¶ 55–57 (misappropriation of trade secrets), ¶ 62 (unfair competition), ¶¶ 63-64 (conversion), ¶¶ 65-66 (unjust enrichment), & ¶ 67 (conspiracy).

[9] Docket entry # 211, ex. A (Alex Weinberg's deposition testimony), pp. 128-30. Weinberg attested in an affidavit that the original map reflected 73 areas of interest. Docket entry # 222, ex. 1, ¶ 5. Apparently, one area of interest was divided in two: areas 51A and 51B. *Id*., ¶ 8.

[10] Docket entry # 211, ex. A, pp. 131 & 253-54.

[11] *Id*. at pp. 254 & 326-38.

without access to Target Strike's confidential information.¹² According to Target Strike's corporate representative — Alex Weinberg — the close proximity of the seven claims proves the Addington defendants obtained the map because "nobody is that lucky" otherwise.¹³

Each of plaintiff's claims for relief requires proof that the corporate Addington defendants obtained access to Target Strike's confidential and proprietary information. The only confidential and proprietary information Target Strike has complained about is the locations of the 72 TF-identified areas of mineral interest. The misappropriation-of-trade secrets-and/or-proprietary-data claim is based on obtaining access to Target Strike's confidential and proprietary information through improper means and then using and publishing the information.¹⁴ Under Target Strike's theory of liability, this claim requires proof that the corporate Addington defendants obtained access to the locations of Target Strike's areas of mineral interest. Without such proof, Target Strike cannot prove the elements of misappropriation of trade secrets.

Target Strike's other claims require the same proof. The unfair competition claim alleged that instead of protecting Target Strike's proprietary information, the defendants stole the information and unjustly enriched themselves.¹⁵ This claim requires Target Strike to prove the corporate Addington defendants stole the locations of Target Strike's areas of mineral interest. The conversion claim alleged that the defendants "assumed and exercised dominion and control over [Target Strike's trade secrets and confidential and proprietary information] in an unlawful

---

¹²*Id.* at p. 133.

¹³*Id.* at 133.

¹⁴Docket entry # 119, ¶¶ 55-57.

¹⁵*Id.* at ¶ 62.

and unauthorized manner to the exclusion of and inconsistent with" Target Strike's rights.[16]  This claim requires Target Strike to prove the corporate Addington defendants assumed and exercised dominion and control over the locations of Target Strike's areas of mineral interest.  The unjust enrichment claim alleged that the defendants "have wrongfully taken important and valuable assets of [Target Strike], its confidential and proprietary information, trade secrets, and research" and been unjustly enriched by possessing that information.[17]  This claim requires Target Strike to prove the corporate Addington defendants wrongfully obtained the locations of Target Strike's areas of mineral interest.  The conspiracy claim stated that all defendants acted in combination to commit the alleged torts and otherwise breach duties against Target Strike.  This claim requires Target Strike to prove the corporate Addington defendants acted with other defendants to commit alleged torts based on unauthorized access to the locations of Target Strike's areas of mineral interest.  Without proof that the corporate Addington defendants obtained access to the locations of Target Strike's areas of mineral interest, Target Strike cannot prove its claims.

**The motion for summary judgment**.  The corporate Addington defendants argued that they are entitled to summary judgment on all claims because no summary-judgment evidence shows they misappropriated a trade secret.[18]  Because the only trade secret at issue is the locations of Target Strike's areas of interest, the motion requires Target Strike to raise a fact question about whether the corporate Addington defendants obtained access to the locations of Target Strike's areas of interest.  "The court shall grant summary judgment if the movant shows

---

[16]*Id.* at ¶ 63.

[17]*Id.* at ¶¶ 65-66.

[18]Docket entry # 202, p. 7.

8

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19]

**Target Strike's response: the purported LK & CA, Inc. business plan.** In responding to the motion for summary judgment, Target Strike primarily relied on statements in a document Target Strike characterized as LK & CA, Inc.'s business plan.[20] Target Strike obtained the document through discovery; the document was located on a defendant Gold Reef hard drive, under a file labeled "Kip Williams."[21]

The document bears no title, date, or signature, and purports to "summarize the background and history of the gold exploration activities conducted previously by Marston and present a business plan and proposed budget for exploration programs on the Nevada targets."[22] The summary-judgment evidence indicates defendant Clifford R. Williams created the document when he worked as president of Marston Environmental, Inc.[23] Williams testified that he prepared the document based on input from Weinberg, as part of business development.

The document states that "Marston proposes to conduct a preliminary field evaluation of specified target areas for LK & CA in accordance with an approved budget to determine land availability and field check (geologic mapping and sampling) the prospective areas in the spring

---

[19] Fed. R. Civ. P. 56(a).

[20] Docket entry # 219, pp. 4-5.

[21] Docket entry # 222, ex. 23. The record is unclear about whether the hard drive was produced by defendant Gold Reef of Nevada, Inc. or Gold Reef International, Inc.

[22] Docket entry # 222, ex. 16, p. 2.

[23] Docket entry # 211, ex. D, p. 232.

9

of 2004."[24] According to Target Strike, the business plan constitutes "direct evidence of grievous wrongdoing."[25] Because the document's "background" section referred to the identification of "fifty-one additional target areas … [with] a high degree of correlation with six sediment-hosted, disseminated gold deposits used as analogs in northeastern Nevada"[26] and "[t]wenty-two additional targets … that correlated strongly with analogs for volcanic and igneous-associated gold deposits,"[27] Target Strike asserted that the document establishes its case. According to Target Strike, "51 plus 22 equals 73, the same number of targets, or anolmalies, that [Target Strike] discovered through TF's use and depicted on the 73 Anomaly Map created by [Marston Environmental] for [Target Strike.]"[28] Contrary to Target Strike's assertion, the document does not establish its case because — as discussed below — no evidence shows the corporate Addington defendants obtained access to the locations of Target-Strike's areas of interest or the complained-about map.

**Target Strike's response: the January 2002 meeting.** In responding to the summary-judgment motion, Target Strike also relied on a January 2002 meeting between nonparty D.L. Neese, Addington, Kost and Williams.[29] Target Strike insisted that the "wrongful disclosure of

---

[24]Docket entry # 222, ex. 16, p. 1.

[25]Docket entry # 219, p. 4.

[26]Docket entry # 222, ex. 16, p. 5. The difference in the number of areas of interest — 72 versus 73 — is addressed in footnote 9.

[27]*Id.*

[28]Docket entry # 219, p. 5.

[29]*Id.*, p. 7.

10

[its] trade secrets" occurred at the meeting.[30] This reliance is misplaced because the summary-judgment evidence indicates that Target-Strike information was not presented at the meeting.

According to the deponents, the January 2002 meeting was held to convince LK & CA, Inc. to invest $375,000 to explore GRN I's Double Mountain project. Target Strike formed GRN I to explore potential gold deposits in Nevada. GRN I was comprised of Target Strike, and nonparties Chris MaKay and D.L. Neese & Assigns. The Double Mountain project involved 2 areas of interest. The project was an opportunity to test the reliability of TF. However, there is no competent summary judgment evidence that Target Strike controlled that business opportunity.

By virtue of a July 2001 arbitration order, Target Strike lost management control of 8 of the 16 areas of interest owned by GRN I to D.L. Neese & Assigns.[31] D.L. Neese, acting on behalf of D.L. Neese & Assigns, approached Addington and Kost about investing in the project. LK & CA, Inc. would serve as the corporate entity for the investment. D.L. Neese, Addington, Kost and Williams met in January 2002 to discuss the potential investment. All deponents agreed that Williams brought numerous geological maps to the meeting. Target Strike suggested that the maps contained the locations of Target-Strike areas of interest, but as discussed below, the summary-judgment evidence shows that no Target-Strike information was presented at the meeting.

D.L. Neese testified that he was part of a group of investors — D.L. Neese & Assigns — that raised money to conduct initial exploration of TF-identified areas of interest; specifically,

---

[30]*Id*.

[31]Docket entry # 211, ex. H-5 (arbitration order).

11

potential gold deposits in Nevada. Neese filed a lawsuit to obtain authority to act on the financial investment, complaining that Weinberg failed to act on the investment.[32] As a result of the lawsuit, 7 of 15 gold areas of interest, plus an area called "Double Mountain," were awarded to D.L. Neese & Assigns.[33] Neese was awarded unlimited authority to market, sell, drill, and develop the awarded areas of interest without interference from Weinberg or Target Strike. Once in control, Neese approached Addington and Kost about funding projects under his management control. He stated that LK & CA, Inc. required full disclosure of the regional geological and geophysical data, including maps of areas relative to the various gold prospects before investing.[34] In response, Neese called Williams — then president of Marston Environmental — and asked Williams to prepare a presentation of the areas of interest awarded to GRN I.[35] Neese testified that Target Strike's areas of interest were removed from the maps presented to L.K. & C.A., Inc.[36] and the maps were marked "Gold Resources of Nevada."[37]

Addington testified likewise. Addington explained that he insisted on a full geological and geophysical presentation before investing in testing TF-identified areas of interest.[38] Addington reported that D.L. Neese instructed Williams to show GRN I's information to LK &

---

[32] Docket entry # 211, ex. H, p. 64, 89-90 (D.L. Neese deposition).

[33] *Id.*, ex. H, p. 66.

[34] *Id.*, ex. H, p. 30.

[35] *Id.*, ex. H, p. 31.

[36] *Id.*, ex. H, p. 42.

[37] *Id.*, ex. H, p. 32.

[38] Docket entry # 211, ex. E, pp. 50-52, 55 & 57 (Addington deposition);

CA, Inc. as a condition precedent for a financial investment. Addington insisted that he did not want to see any Target-Strike information based on past dealings with Weinberg, because Weinberg had proved to be unscrupulous.[39] After the presentation, LK & CA, Inc., invested in the project. About the meeting, Addington testified that no map was marked as "Target Strike" or "confidential."[40]

Kost echoed Addington's testimony. Kost explained that prior to the January 2002 meeting, Neese approached Kost and Addington about investing in the Double Mountain project,[41] but Addington insisted on expert information before investing.[42] Kost testified that Neese told them that he would arrange a meeting with a consultant from Marston Environmental.[43] During the meeting, Williams presented several maps showing GRN I's areas of interest.[44] Kost testified that Williams began the meeting by stating that he was instructed to remove Target Strike's areas of interest.[45] Kost explained that he and Addington had made it clear that they did not want to see anything awarded to Target Strike.[46]

Williams also testified that no Target-Strike information was presented at the meeting.

---

[39]*Id.*, ex. E, pp. 52, 61 & 68.

[40]*Id.*, ex. E, p. 60.

[41]Docket entry # 211, ex. F, p. 112, 47-48 (Kost deposition).

[42]*Id.*, ex. F, p. 48.

[43]*Id.*, ex. F, p. 48.

[44]*Id.*, ex. F, pp. 49-51 & 123.

[45]*Id.*, ex. F, p. 52.

[46]*Id.*, ex. F, pp. 51- 52 & 75.

13

Williams testified that Target Strike — through Weinberg — first asked Marston Environmental to examine 37 TF-identified areas of interest.[47] According to Williams, after Marston completed its study, Weinberg told Williams that the coordinates for the areas of interest were incorrect, requiring a new study.[48] Target Strike though had no money to pay for a new study. Williams testified that he directed the deletion of the original work from Marston Environmental's files because Weinberg told him the study was based on incorrect information.[49] Subsequently, Marston Environmental prepared a corrected report for GRN I and entered into a contract with GRN I to examine 16 areas of interest.[50] Although Weinberg denied telling Williams that the original information was incorrect,[51] nothing indicates Target Strike contracted for a corrected report or that LK & CA, Inc. obtained access to the original information. Williams explained that after Neese gained management control of GRN I, Neese asked him to share information about GRN I's areas of interest with Addington and Kost.[52] Williams then directed Marston Environmental's map-maker — William Hartley[53] — to remove the areas of interest awarded to Target Strike from GRN I's maps.[54] Williams stated that Hartley was the only other person who

---

[47]Docket entry # 211, ex. D, pp. 12 & 77 (Williams's deposition).

[48]*Id.*, ex. D, pp. 110-11 & 120-21.

[49]*Id.*, ex. D, pp. 114 & 188.

[50]*Id.*, ex. D, pp. 119-22.

[51]Docket entry # 222, ex. 1, ¶ 8.

[52]Docket entry # 211, ex. D, pp. 132, 204, 206, 225-26, 318 & 351.

[53]Hartley's involvement in this case is discussed in the Sixth Report and Recommendation. *See* docket entry # 242.

[54]Docket entry # 211, ex. D, p. 299.

had the information about Target Strike's areas of interest.[55] Hartley's testimony is consistent with Williams's testimony. Hartley testified that after the arbitration, Williams instructed him to remove Target Strike's areas of interest from the maps for the presentation to Addington and Kost.[56]

**Recommendation**. The summary-judgment record contains no evidence raising a fact question about whether the corporate Addington defendants obtained access to Target Strike's areas of interest. Without such evidence, Target Strike may not proceed to trial on its claims against the corporate Addington defendants. The purported LK & CA, Inc. business plan does not raise a fact question because the document does not show that the corporate Addington defendants obtained access to the locations of Target-Strike areas of interest. The summary-judgment evidence shows that the information presented during the January 2002 meeting belonged to GRN I, not Target Strike. Weinberg's speculative assertion about the alleged close proximity of claims staked on behalf of the Addington defendants is insufficient to raise a fact question about Target Strike's claims against the corporate Addington defendants. The summary-judgment record includes no evidence upon which a rational trier of fact could find for Target Strike.[57] I recommend granting the corporate Addington defendants' motion (docket entry # 202).

---

[55]*Id.*, ex. D, p. 174.

[56]Docket entry # 222, ex. 32, pp. 23-25 & 60.

[57]*See James by James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) ("The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court.").

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[58] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[59] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[60]

**SIGNED** on April 11, 2011.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[58] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[59] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[60] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

16