# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TARGET STRIKE, INC., | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff, | § | |
| | § | SA-10-CV-0188-OLG (NN) |
| v. | § | |
| | § | |
| MARSTON & MARSTON, INC.; | § | |
| MARSTON ENVIRONMENTAL, INC.; | § | |
| CLIFFORD R. "KIP" WILLIAMS; | § | |
| GOLD REEF INTERNATIONAL, INC.; | § | |
| GOLD REEF OF NEVADA, INC.; | § | |
| CRANDELL ADDINGTON; | § | |
| SADIK AL-BASSAM; | § | |
| RICHARD CRISSMAN CAPPS; | § | |
| LOU B. KOST, JR.; | § | |
| LOU KOST HOLDINGS, LTD.; | § | |
| PAUL STROBEL; | § | |
| PANTHER RESOURCES, INC.; | § | |
| PANTHER RESOURCES | § | |
|    PARTNERS LLLP; | § | |
| ADDKO, INC.; | § | |
| TEXAS RESEARCH, LLC; | § | |
| L.K. & C.A., INC.; | § | |
| MEXIVADA MINING CORPORATION | § | |
| OTHER UNKNOWN DEFENDANTS | § | |
|    ACTING IN CONCERT WITH THE | § | |
|    ABOVE NAMED DEFENDANTS, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| CLIFFORD R. "KIP" WILLIAMS; RICHARD CRISSMAN CAPPS; and PAUL STROBEL; | § § § § |
| Counter-Plaintiffs, | § § § |
| v. | § § |
| TARGET STRIKE, INC.; and GOLD RESOURCES OF    NEVADA, LLC (GRN I). | § § § § |
| Counter-Defendants. | § § § |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| CRANDALL ADDINGTON; SADIK AL-BASSAM; LOU B. KOST, JR.; LOU KOST HOLDINGS, LTD.; RESURRECTION CANYON, INC., f/k/a    PANTHER RESOURCES, INC.; RESURRECTION CANYON, LLLP, f/k/a    PANTHER RESOURCES    PARTNERS, LLLP; ADDKO, INC.; TEXAS RESEARCH, LLC; and L.K. & C.A., INC., | § § § § § § § § § § § § |
| Counter-Plaintiffs, | § § |
| v. | § § |
| TARGET STRIKE, INC, and GOLD RESOURCES OF    NEVADA, LLC (GRN I), | § § § § |

|  |  |
|---|---|
| Counter-Defendants. | § § § |

******************************************

|  |  |
|---|---|
| | § § § |
| RESURRECTION CANYON, LLLP, f/k/a PANTHER RESOURCES PARTNERS, LLLP, | § § § § |
| | § |
| Counter-Plaintiff, | § § |
| v. | § § |
| TARGET STRIKE, INC. and GOLD RESOURCES OF NEVADA, LLC (GRN I), | § § § § |
| Counter-Defendants. | § § § |

******************************************

|  |  |
|---|---|
| | § § |
| CLIFFORD R. "KIP" WILLIAMS, RICHARD CRISSMAN CAPPS, and PAUL STROBEL, | § § § § |
| Counter-Plaintiffs, | § § |
| v. | § § |
| TARGET STRIKE, INC. and GOLD RESOURCES OF NEVADA, LLC (GRN I), | § § § § |
| Counter-Defendants. | § § |

# NINTH REPORT AND RECOMMENDATION

TO: Honorable Orlando Garcia
United States District Judge

This report and recommendation addresses the motion for summary judgment filed by defendants Crandell Addington, Lou B. Kost, and Sadik Al-Bassam. These defendants are part of a group of defendants the parties characterize as "the Addington defendants."[1] This report and the parties refer to movant-defendants as the "individual Addington defendants." The summary-judgment evidence was filed under seal, but I did not seal this report because it does not specifically refer to confidential matters. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

**The parties**. Plaintiff Target Strike claims the development of a software program that reduces the time and cost of identifying areas with a potential for discovering minerals; relevant to the pending motion, for discovering gold. Target Strike calls the technology "Target Forecasting" or TF. Target Strike sought investors to test its technology beginning in 1997. Working with Marston Environmental, Inc., Target Strike identified 16 areas of interest to explore. Target Strike created a separate

---

[1] The Eighth Report and Recommendation identifies the Addington defendants.

[2] Fed. R. Civ. P. 56(a).

corporate entity — former plaintiff Gold Resources of Nevada or GRN I — to conduct the test. The test focused on a Nevada site referred to as Double Mountain. Defendants Addington, Kost and Al-Bassam invested money in a corporation called LK & CA, Inc. to test TF at Double Mountain.[3] The test failed to result in the discovery of gold using TF.

Addington and Kost later formed Gold Reef of Nevada, Inc.[4] Target Strike alleges that Gold Reef of Nevada staked claims near an area where Target Strike maintains it planned to stake claims.[5] According to Target Strike's corporate representative — Alex Weinberg — the close proximity of those claims to locations where Target Strike planned to stake claims proves the Addington defendants obtained Target Strike's confidential and proprietary information about the locations of mineral deposits because "nobody is that lucky" otherwise.

**Target Strike's claims**. Target Strike brought the following claims against the individual Addington defendants: (1) misappropriation of trade secrets, (2) unfair

---

[3]Target Strike also sued LK & CA, Inc. The claims against LK & CA, Inc. are addressed by the Eighth Report and Recommendation.

[4]Gold Reef of Nevada, Inc., was acquired by a Canadian company called OMG Mineral Exploration. OMG's name was then changed to Gold Reef International, Inc. Target Strike also sued Gold Reef International, Inc.

[5]Target Strike also sued Gold Reef of Nevada, Inc.

competition, (3) conversion, (4) unjust enrichment, and (5) conspiracy.⁶ Target Strike's claims against the individual Addington defendants are pleaded generally; that is, the claims are pleaded against all defendants. The only allegations specific to the individual defendants follow:

1.  "Addington and Kost were … provided geologic information that exceeded the 2 areas of interest in which they had invested — an occurrence that violated MMI's and MEI's obligation to protect [Target Strike's] confidential information."⁷

2.  "Addington and Kost, as investors in Double Mountain, were … aware that MEI/MMI and MEI/MMI personnel … worked for [Target Strike] and GRN I … and were duty-bound never to disclose such information to any other persons or entities."⁸

3.  "Claims related to [Target-Strike]-discovered areas of interest have subsequently been assigned to Addington, Kost, [and] Al-Bassam …."⁹

4.  "Al-Bassam's liability is predicated on his possession and current use of [Target Strike's] and GRN I's confidential, or trade secret, information regarding the location of minable precious metal deposits. He gained secret information from third persons with notice of the fact that it was secret and that the third persons discovered it by improper means or that the third person's disclosure of it was otherwise a breach of their duty to another.…Al-Bassam ignored the possible wrongdoing of the other defendants, including the Marston entities, Addington, Kost, Kip Williams and Gold Reef, and continues to claim interests that are

---

⁶Docket entry # 119, ¶¶ 55–57 (misappropriation of trade secrets), ¶ 62 (unfair competition), ¶¶ 63-64 (conversion), ¶¶ 65-66 (unjust enrichment), & ¶ 67 (conspiracy).

⁷Docket entry # 119, ¶ 36. MMI refers to defendant Marston & Marston, Inc. MEI refers to Marston Environmental, Inc.

⁸*Id.*, ¶ 37.

⁹*Id.*, ¶ 38.

derived from [Target Strike's] and GRN II's [sic] proprietary information."[10]

5. "It is further alleged that … Addington, Kost, Al-Bassam …are wrongfully exploring mining opportunities that they learned about through MMI/MEI/Kip Williams/Capps/Shaffer/Hartley/Strobel from information that constitutes [Target Strike's] and GRN I's proprietary data."[11]

6. Alter ego and joint enterprise are alleged with respect to <u>all</u> <u>defendants</u>, including those with which Addington and Kost were or are affiliated. The various corporate entities created by Addington and Kost are numerous, and it appears that they were formed as part of an elaborate plan to conceal the misappropriation of [Target Strike's ] and GRN I's confidential information."[12]

**The motion for summary judgment**. The individual Addington defendants argued that they are entitled to summary judgment because Addington and Kost's initial investment in the Double Mountain project and subsequent investments, and transactions by all three individual Addington defendants were conducted through corporations and other limited liability entities. Because they were directors, officers, and/or shareholders of the various defendant corporate entities, the individual Addington defendants maintain they are protected from individual liability.[13]

**Texas corporations law**. The individual Addington defendants' argument is based on a "bedrock principle of [Texas] corporate law … that an individual can

---

[10]*Id.*, ¶ 39.

[11]*Id.*, ¶ 40.

[12]*Id.*, ¶ 73.

[13]Docket entry # 201, pp. 5-6.

7

incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations."[14] "Generally, a corporate officer's acts on the corporation's behalf are deemed corporate acts."[15] Ordinarily, Texas courts will not "hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud…."[16] Under section 21.223 of the Texas Business Organizations Code, a shareholder of a corporation may not be held liable for the corporation's contractual obligations or matters relating to or arising from the obligations "on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory."[17] This section does not preclude liability "if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."[18]

---

[14]*Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006).

[15]*ACS Investors v. McLaughlin*, 943 S.W.2d 426, 432 (Tex. 1997).

[16]*Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 340 (Tex. 1968).

[17]Tex. Bus. Orgs. Code § 21.223(a)(2) (West 2010).

[18]*Id*. § 21.223(b).

The summary-judgment evidence shows that at the times relevant to Target Strike's allegations, the individual Addington defendants acted through corporate entities.[19] Because Texas corporations law shields them from liability on that basis, the individual Addington defendants are entitled to summary judgment unless Target Strike presents summary-judgment evidence raising a fact issue about individual liability.

**Target Strike's response**. Target Strike argued that the individual Addington defendants are liable because they committed torts.[20] The alleged torts are based on the alleged misappropriation of the locations of Target Strike's TF-identified areas of mineral interests. Target Strike asserted that summary-judgment evidence shows that

---

[19]Docket entry # 21, ex. E, pp. 107-08 (Addington testifying that neither he nor Kost participated in their individual capacities and stating that he answered for corporate entities); ex. F, p. 56 (Kost testifying that LK & CA, Inc. invested in the exploration of Double Mountain); ex. F, p. 76 (Kost testifying that LK & CA, Inc. entered an option agreement with GRN I); ex. F, p. 80 (Kost testifying that he and Addington always operate with a limited partnership or a general partner of a corporation of the limited partnership for maximum protection); ex. F, pp. 131-44 (Kost testifying about incorporating Gold Reef of Nevada, Inc. for exploration in Nevada and the roles he and Addington played in the corporation); ex. F, pp. 162-63 (Kost testifying about All-Bassam's purchase of Golf Reef of Nevada stock); ex. F-3 (reflecting Al-Bassam investment of $405,000 in the Double Mountain project); ex. F-4 (LK & CA, Inc.'s checks for its $375,000 investment in the Double Mountain project). *See also* docket entry # 22, ex. 42, pp. 15-16 (Al-Bassam testifying about his role as director in Gold Reef of Nevada); ex. 42, pp. 28-29 & 35-36 (Al-Bassam testifying about his financial investment in Gold Reef of Nevada).

[20]Docket entry # 220, pp. 5-6.

Addington and Kost engaged in tortious activities individually and that the corporations of which they were officers committed torts as well.[21]

The latter assertion — that the corporations of which the individual Addington defendants were officers committed torts — was addressed in the Eighth Report and Recommendation.[22] In that report, I explained that Target Strike did not raise a fact question about whether the corporate Addington defendants committed alleged torts — specifically, because the summary-judgment record contained no evidence raising a fact question about whether the corporate Addington defendants obtained access to the locations of Target Strike's areas of mineral interest.

The other argument upon which Target Strike relies — that Addington and Kost engaged in tortious activities individually — fails to provide a basis for liability for two reasons. First, section 21.223's scope reaches torts. U.S. Bankruptcy Judge Gargotta recently surveyed case law about section 21.223 and concluded the provision applies to torts.[23] Additionally, section 21.223 applies to a "corporation's contractual obligations *or*

---

[21]*Id.*, p. 7.

[22]Docket entry # 259.

[23]*See In re Antone's Records*, Adversary No. 09–01010–CAG, 2011 WL 309146, at * 24 (Bankr. W.D. Tex. Jan. 25, 2011) ("Given its broad scope, Section 21.223 applies to both contractual claims and ancillary torts.").

10

*matters relating to or arising from the obligations.*"[24]  Target Strike complains about actions relating to LK & CA, Inc.'s contractual obligations — in particular, Target Strike complains about conduct related to LK & CA, Inc.'s option agreement for investing in the Double Mountain project.[25]  Target Strike contends the individual Addington defendants obtained unauthorized access to the locations of its areas of mineral interest — beyond the information for the Double Mountain project — and used the information to wrongfully explore mining opportunities.  However, these specific allegations bring Target Strike's claims squarely within section 21.223's applicability.

Under section 21.223, "the corporate veil may not be pierced absent a showing of actual fraud."[26]  Target Strike argued that defendants' misappropriation of the locations of its areas of interest constitutes "actual fraud."  However, as was noted in the Eighth Report and Recommendation, Target Strike's response presented no evidence to support its assertion that the individual defendants engaged in actual fraud sufficient to pierce the corporate veil and subject these shareholders to liability.  Because by its terms section 21.223 applies to shareholders,[27] the provision protects the individual Addington

---

[24]Tex. Bus. Orgs. Code Ann. § 21.223(a)(2) (West 2010).

[25]Docket entry # 211, ex. H-6.

[26]*Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex. App. – San Antonio 1998, no pet.).

[27]*Kingston v. Helm*, 82 S.W.3d 755, 765 (Tex. App.—Corpus Christi 2002, pet. denied) (interpreting section 21.223's predecessor — section 2.21 of the Texas Business

11

defendants from liability based on their roles as shareholders.

The second reason Target Strike's argument fails is because no summary-judgment evidence shows the individual Addington defendants committed the alleged torts. Target Strike relies on the Texas court of appeals decision in *Holberg v. Teal* to establish liability based on the roles of the individual Addington defendants as corporate officers and/or directors. In *Holberg*, the court of appeals stated: "It has long been the rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation."[28] That is, the individual Addington defendants can be held liable in their individual capacities based on their roles as officers and/or directors without corporate veil piercing if they are personally liable for any fraudulent or tortious acts — even those committed while acting for corporate entities.[29] Prevailing under this theory requires Target Strike to present evidence that the individual Addington defendants engaged in fraudulent or tortious acts. The alleged fraudulent or tortious acts on which Target Strike relies are

---

& Corporations — and stating that "by its terms" the provision protects a corporation's shareholders).

[28]*Holberg v. Teal Const. Co.*, 879 S.W.2d 358, 360 (Tex. App.—Hous. [14 Dist.] 1994, no writ). A Texas court of appeals determined that the statutory provision protecting shareholders from liability did not overrule "general principle that an agent is always liable for his or her own tortious conduct…." *Kingston*, 82 S.W.3d at 766.

[29]*See Sheffield v. Gibson*, No. 14-06-00483-CV, 2008 WL 190049, at *4 (Tex. App.—Hous. [14 Dist.] Jan. 22, 2008, no pet.).

the individual Addington defendants misappropriation of the locations of Target Strike's areas of mineral interest. Despite its assertion that Addington and Kost engaged in tortious activities individually,[30] and that Al-Bassam knew about the alleged wrongdoing, Target Strike cited to no summary-judgment evidence supporting its position.[31] Although the court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment, the undersigned scoured the summary-judgment record out of an abundance caution.[32] The record contains nothing raising a fact question about whether Addington, Kost or Al-Bassam engaged in tortious activity. As to Al-Bassam, the record contains no evidence that Al-Bassam received any information about the locations of Target Strike areas of interest. As to Addington and Kost, the summary-judgment evidence shows that they received information about former plaintiff GRN I's areas of interest, but no information about Target Strike areas of interest. That evidence is detailed in the Eighth Report and Recommendation.

**Recommendation**. I recommend granting the individual Addington defendants'

---

[30]Docket entry # 220 p. 7.

[31]Docket entry # 222, p. 7.

[32]*See Skotak v. Tenneco Resins*, 953 F.2d 909, 916 (5th Cir. 1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment….").

motion for summary judgment (docket entry # 201). The summary-judgment record shows the individual Addington defendants acted as directors, officers, and/or shareholders of the Addington corporate defendants. Texas corporations law protects the individual Addington defendants from individual liability based on shareholder liability. As for liability based on their roles as officers and/or directors, no summary-judgment evidence raises a fact question about whether the individual Addington defendants engaged in tortious acts.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[33] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general

---

[33] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[34] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[35]

**SIGNED** on April 19, 2011.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[34]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[35]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).