# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TARGET STRIKE, INC., | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff, | § | |
| | § | SA-10-CV-0188-OLG (NN) |
| v. | § | |
| | § | |
| MARSTON & MARSTON, INC.; | § | |
| MARSTON ENVIRONMENTAL, INC.; | § | |
| CLIFFORD R. "KIP" WILLIAMS; | § | |
| GOLD REEF INTERNATIONAL, INC.; | § | |
| GOLD REEF OF NEVADA, INC.; | § | |
| CRANDELL ADDINGTON; | § | |
| SADIK AL-BASSAM; | § | |
| RICHARD CRISSMAN CAPPS; | § | |
| LOU B. KOST, JR.; | § | |
| PAUL STROBEL; | § | |
| PANTHER RESOURCES, INC.; | § | |
| PANTHER RESOURCES | § | |
|    PARTNERS LLLP; | § | |
| MEXIVADA MINING CORPORATION; | § | |
| & OTHER UNKNOWN DEFENDANTS | § | |
|    ACTING IN CONCERT WITH THE | § | |
|    ABOVE NAMED DEFENDANTS, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

*******************************************

1

| | |
|---|---|
| CLIFFORD R. "KIP" WILLIAMS; | § |
| RICHARD CRISSMAN CAPPS; and | § |
| PAUL STROBEL; | § |
| | § |
| Counter-Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| TARGET STRIKE, INC.; and | § |
| GOLD RESOURCES OF | § |
| NEVADA, LLC (GRN I). | § |
| | § |
| Counter-Defendants. | § |
| | § |
| | § |

**************************************

| | |
|---|---|
| | § |
| CRANDALL ADDINGTON; | § |
| SADIK AL-BASSAM; | § |
| LOU B. KOST, JR.; | § |
| LOU KOST HOLDINGS, LTD.; | § |
| RESURRECTION CANYON, INC., f/k/a | § |
| PANTHER RESOURCES, INC.; | § |
| RESURRECTION CANYON, LLLP, f/k/a | § |
| PANTHER RESOURCES | § |
| PARTNERS, LLLP; ADDKO, INC.; | § |
| TEXAS RESEARCH, LLC; and | § |
| L.K. & C.A., INC., | § |
| | § |
| Counter-Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| TARGET STRIKE, INC, and | § |
| GOLD RESOURCES OF | § |
| NEVADA, LLC (GRN I), | § |
| | § |
| Counter-Defendants. | § |

```
*******************************************
RESURRECTION CANYON, LLLP, f/k/a          §
    PANTHER RESOURCES                     §
    PARTNERS, LLLP,                       §
                                          §
            Counter-Plaintiff,            §
v.                                        §
                                          §
TARGET STRIKE, INC. and                   §
GOLD RESOURCES OF                         §
    NEVADA, LLC (GRN I),                  §
                                          §
            Counter-Defendants.           §
                                          §
*******************************************
CLIFFORD R. "KIP" WILLIAMS,               §
RICHARD CRISSMAN CAPPS, and               §
PAUL STROBEL,                             §
                                          §
            Counter-Plaintiffs,           §
v.                                        §
                                          §
TARGET STRIKE, INC. and                   §
GOLD RESOURCES OF                         §
    NEVADA, LLC (GRN I),                  §
                                          §
            Counter-Defendants.           §
```

### TWELFTH REPORT AND RECOMMENDATION

TO:    Honorable Orlando Garcia
       United States District Judge

This report and recommendation addresses plaintiff Target Strike's motion to

remand this case (docket entry # 281). After considering the motion and the applicable

legal principles, I recommend denying the motion.

**Procedural background**.  Target Strike initiated this lawsuit in state court on February 10, 2010.  The defendants removed the case to this court on March 5, 2010.[1] Target Strike amended its complaint on April 2, 2010.  The amended complaint added a claim for false designation of origin under 15 U.S.C. § 1125(a),[2] added Gold Resources of Nevada, Inc. (GRN I) as a plaintiff, and stated that a "federal question is raised by the complaint, giving rise to subject matter under 28 U.S.C. § 1331."[3]

On April 16, 2010, defendants Marston & Marston, Inc. and Marston Environmental, Inc. (together, Marston) asked for a more definite statement[4] and moved to dismiss.[5]  Defendants Crandell Addington, Sadik Bassam, and Lou B. Kost (the Addington defendants) moved to dismiss.[6]  GRN I filed a complaint on May 7, 2010.[7] GRN I's complaint included a claim for false designation of origin under 15 U.S.C. § 1125(a) and clarified that claim by alleging that the defendants falsely described the

---

[1]Docket entry # 1.

[2]Docket entry # 25, ¶¶ 64-67.

[3]Docket entry # 25, ¶ 23.

[4]Docket entry # 31.

[5]Docket entry # 32.

[6]Docket entry # 29.

[7]Docket entry # 49.

origin of a technology known as Metal Miners Plus.[8]  Defendant Mexivada Mining

Corporation then moved to dismiss on various grounds.[9]  The court resolved the then-

pending motions in favor of the plaintiffs.[10]

Nine defendants sought to compel arbitration of the plaintiffs' claims.[11]  The

motion to compel arbitration was resolved in favor of the plaintiffs.[12]  On October 4,

2010, the plaintiffs sought to amend their respective complaints to file a single

complaint.  The amended complaint — the second amended complaint and the live

complaint in this case — deleted a previously-pleaded claim under the Texas Theft

---

[8]Docket entry # 119, ¶ 69.

[9]Docket entry # 60.

[10]Docket entry # 72 (denying Martson's motion for more definite statement because the amended complaints gave Marston fair notice of the plaintiffs' claims); docket entry # 73 (recommending that Marston's motion to dismiss be denied because Target Strike's amended complaint added sufficient detail about reliance on alter ego liability and because GRN I's amended complaint identified GRN I's causes of action); docket entry # 74 (recommending denying the Addington defendants' motion to dismiss because amended pleadings provided sufficient specificity); docket entry # 79 (denying Marston's motion to dismiss); docket entry # 80 (denying the Addington defendants' motion to dismiss); docket entry # 137 (recommending denying Mexivada's motion to dismiss); & docket entry # 146 (denying Mexivada's motion to dismiss).

[11]Docket entry # 108.

[12]Docket entry # 136 (explaining that the motion to compel arbitration should be denied because the underlying arbitration agreement did not apply to the parties or the claims in dispute); docket entry # 146 (denying motion to compel arbitration).

Liability Act.[13]

On November 17, 2010, the plaintiffs sought to remove their case from the jury docket, arguing that neither side properly requested a jury trial.[14] The court denied the request.[15] Discovery was conducted, discovery disputes were resolved, dispositive motions and pretrial submissions were filed. One of the dispositive motions sought judgment on the pleadings for the false designation of origin claim.[16] In the motion, the defendants attacked Target Strike's suggestion that Metal Miners Plus is suspiciously similar to its Target Forecasting software.[17] After conducting discovery on the capabilities and copyright of Metal Miners Plus, Target Strike voluntarily relinquished the claim.[18] GRN I non-suited its claims,[19] leaving Target Strike as the only plaintiff.

After the court entered summary judgment in favor of six defendants[20] and

---

[13]Docket entry # 111.

[14]Docket entry # 82.

[15]Docket entry # 144 (recommending denying motion to withdraw case from jury docket); docket entry # 150 (denying motion to withdraw case from jury docket).

[16]Docket entry # 181.

[17]Docket entry # 181, p. 9.

[18]Docket entry # 212.

[19]Docket entry # 240.

[20]Docket entry # 242 (recommending granting motions for summary judgment filed by William Hartley and William Shaffer); docket entry # 258 (granting motions for summary judgment and dismissing claims against Hartley and Shaffer); docket entry #

excluded Target Strike's expert,[21] and after the undersigned recommended summary judgment in favor of three other defendants,[22] Target Strike moved to remand this case to state court.[23]

**Target Strike's motion to remand**.  Target Strike's motion can be summarized as follows: (1) Target Strike maintains no basis existed for removing this case because the original complaint did not raise a federal question.  (2) Target Strike contends that although it later amended its complaint to add a federal question, relinquishing that claim left no basis for federal jurisdiction.  Resolving the motion requires the district court to examine three precise points of time.  The first point is the time of removal.

**Removability**.  A defendant may remove to federal court "any civil action brought in State court of which the district courts of the United States have original jurisdiction."[24]  "[R]emoval statutes are to be construed strictly against removal and for

---

259 (recommending summary judgment for defendants Texas Research, LLC; Kost Holdings, Ltd.; ADDKO, Inc.; and L.K. & C.A., Inc.); docket entry # 278 (granting summary judgment motion filed by Texas Research, LLC; Kost Holdings, Ltd.; ADDKO, Inc.; and L.K. & C.A., Inc.).

[21]Docket entry # 244 (recommending excluding Target Strike's damages expert); docket entry # 270 (excluding Target Strike's damages expert); docket entry # 284 (explaining why Target Strike should not be permitted to supplement its expert report).

[22]Docket entry # 262 (recommending summary judgment in favor of defendants Crandell Addington, Lou B. Kost, and Sadik Al-Bassam).

[23]Docket entry # 281.

[24] 28 U.S.C. §§ 1441(a) and 1446(a).

remand."[25]  "To support removal, the defendant bears the burden of establishing federal jurisdiction over the state-court suit."[26]  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[27]

Ordinarily, two bases exist for subject matter jurisdiction: federal question jurisdiction and diversity jurisdiction.  Under 28 U.S.C. § 1332, a federal court has jurisdiction over controversies involving disputes between citizens of different states where the amount in controversy exceeds $75,000.00.  The parties do not dispute the inapplicability of diversity of jurisdiction.

Under 28 U.S.C. § 1331, a federal court has jurisdiction over controversies involving questions of federal law.  When federal jurisdiction is based on a federal question, the action must arise "under the Constitution, laws, or treaties of the United States."[28]  The parties disagree about whether this case involved a question arising under federal law at the time of removal.

**Time of removal**.  The defendants removed this case asserting the case "involves a federal question under the Federal Copyright Act under 17 U.S.C. §§ 201 and 301(a)."[29]

---

[25]*Eastus v. Blue Bell Creameries*, 97 F.3d 100, 106 (5th Cir. 1996).

[26]*Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).

[27]28 U.S.C. § 1447(c).

[28]28 U.S.C. § 1331.

[29]Docket entry # 1, ¶ 5(A).

At the time of removal, Target Strike had not explicitly stated a cause of action created by federal law, but instead, pleaded allegations of the type "Justice Frankfurter called the 'litigation-provoking problem,' — the presence of a federal issue in a state-created cause of action."[30]  Because Target Strike's original petition had not stated a cause of action created by federal law, the court must determine whether Target Strike alleged a claim arising under federal law.

To determine whether Target Strike pleaded a claim arising under federal law, the district court must look to Target Strike's original petition because that was the live complaint at the time of removal.[31]  "There is no 'single, precise definition' of [the arising-under] concept; rather, 'the phrase 'arising under' masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.'"[32]  "[A] case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.'"[33]  "[T]he party who brings a suit is master to decide what law he will rely upon

---

[30]*Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 810 (1986).

[31]*See Air Prods. & Chems. v. Reichhold Chems.*, 755 F.2d 1559, 1562 (Fed. Cir. 1985) ("[A] court must review and analyze the plaintiff's pleadings, with special attention directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws, or is a cause of action based upon a licensing agreement.").

[32]*Merrell Dow Pharm.*, 478 U.S. at 808 (citation omitted).

[33]*Merrell Dow Pharm.*, 478 U.S. at 808.

and therefore…determine[s] whether he will bring a 'suit arising under'…the United

States by his declaration or bill."[34]

The original petition complained about the misappropriation of trade secrets.

The alleged trade secrets are the locations of mining opportunities in Nevada

determined by Target Strike's Target Forecasting technology.  Target Strike characterizes

the locations as its proprietary information.  Under a cause of action captioned "Texas

Theft Liability Act," Target Strike alleged that the defendants created a story to cover up

how they learned of the locations of mining opportunities:

> Defendants have even fraudulently attempted to explain their possession
> of the data, concocting the fiction that they discovered it on their own
> through some type of allegedly proprietary software system known as
> Metal Miners Plus.  The defendants' attempt to explain their possession of
> [Target Strike's] trade secrets in this manner is nothing but a ruse to
> fraudulently conceal their wrongdoing and the injury caused to [Target
> Strike].  In truth, Metal Miners Plus was the result of work performed
> under the [Target Strike/Marston] consulting agreement, and therefore
> constitutes a technology owned by [Target Strike].[35]

The latter statement asserted ownership of a copyrighted work because Metal Miners

Plus is a copyrighted work owned by certain defendants.

Under 17 U.S.C. § 201, a copyright "vests initially in the author or authors of [a]

---

[34]*The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).

[35]Docket entry # 1, state court papers, p. 14 of Target Strike's original petition,
imaged as p. 20 of ex. 1.

work" and "authors of a joint work are coowners of copyright in the work."[36]  Federal

copyright law provides for civil actions and remedies for a copyright owner.[37]  Federal

copyright law also reflects Congress's intent for federal copyright law to preempt state

common law and statutory law equivalent to copyright.[38]  By asserting ownership of a

copyrighted work — that is, ownership of Metal Miners Plus — Target Strike pleaded a

litigation-provoking problem involving copyright law.  By pleading a litigation-

provoking problem involving copyright law, Target Strike's complaint involved a right

arising under federal law.  As pleaded, the resolution the Texas-Theft-Liability-Act claim

necessarily turned on the construction of copyright law because Target Strike's

allegations put the ownership of Metal Miners Plus in dispute.  Knowledge of the

complained-about locations would not constitute theft if the defendants acquired the

knowledge by virtue its wholly-owned technology, rather than because of work

provided under the Target Strike/Marston consulting agreement and as a result of

technology owned by Target Strike.

     "Although Target Strike now asserts that it "was certainly not invoking the

---

[36]17 U.S.C. § 201(a).

[37]17 U.S.C. §§ 501-05.

[38]*See Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995) ("The Copyright Act expressly preempts all causes of action falling within its scope, with a few exceptions.").

Federal Copyright Act to state a federal claim,"[39] it did not deny a claim under federal copyright law at the time of removal. Instead, Target Strike acquiesced to the defendants' characterization of its allegations, amended its complaint to allege the false origin of Metal Miners Plus and to assert ownership of Metal Miners Plus,[40] and pursued discovery about the origin and copyright of Metal Miners Plus.[41] While Target Strike relies on its own characterization of the applicable cause of action — that defendant violated section 31.05 of the Texas Penal Code — as supporting its assertion that it was not pursuing a copyright claim,[42] Target Strike deleted that claim in the second amended

---

[39]Docket entry # 281, p. 4.

[40]Docket entry # 119, ¶¶ 68-72.

[41]*See* docket entry # 211, ex. D, pp. 59-61, 261 (on Nov. 15, 2010, Target Strike deposed Clifford Kip Williams about the copyright for Metal Miners Plus); *id.*, ex. E, pp. 72-75, 167-69, 208-09 (on Nov. 19, 2010, Target Strike deposed Crandell Addington about the difference in Metal Miners Plus and Target Forecasting, and about the copyright for Metal Miners Plus); *id.*, ex. F, p. 207, 249-50 (on Dec. 9, 2010, Target Strike deposed Lou Kost about the creation and marketing of Metal Miners Plus); docket entry # 222, ex. 32, pp. 46-48 (on Dec. 20, 2010, Target Strike deposed William Hartley about the capabilities of Metal Miners Plus and whether Hartley discussed Metal Miners Plus with Clifford Kip Williams, Crandell Addington and Lou Kost). *See also* docket entry # 216, ex.55 (Target Strike identified Marston's involvement in the development of Metal Miners Plus, and the development of any software while providing services to Target Strike, as subjects for the Marston defendants' depositions to be held on Dec. 21, 2010).

[42]*See* docket entry # 281, p. 4 (asserting that its conclusion is supported by that section of its complaint explicitly alleging defendant violated section 31.05 of Texas Penal Code); docket entry # 1, ex. 1, Target Strike's original complaint, p. 15, imaged as p. 21 (cause of action captioned "Violation of Texas Theft Liability Act").

complaint,[43] after it added the claim under 15 U.S.C. § 1125(a).  Deleting the state-law

claim and adding the federal claim reflected Target Strike's choice to pursue ownership

in a copyrighted work.

Had Target Strike disavowed a federal claim at the time of removal and sought to

remand the case, I would have characterized the quoted language as insufficient to state

a claim arising under federal copyright law[44] and recommended remanding this case.

But instead, Target Strike remained silent about the ground for removal and

affirmatively invoked federal court jurisdiction by adding a federal claim aimed at

ownership of Metal Miners Plus.  Target Strike deleted the federal claim only after

conducting discovery about the copyright for Metal Miners Plus.

As the party who brought this lawsuit, Target Strike was the master to decide

what law it would rely upon and therefore determine whether it would pursue a claim

arising under copyright law.[45]  By choosing not to seek remand and pursuing discovery

on the copyright for Metal Miners Plus, Target Strike admitted that it challenged the

ownership of a copyrighted work and claimed ownership in the Metal Miners Plus,

---

[43]Docket entry # 111 (seeking leave to amend, in part, to delete cause of action under Texas Theft Liability Act).

[44]*See Spectrum Creations v. Carolyn Kinder Int'l*, 514 F. Supp. 2d 934, 949-950 (W.D. Tex. 2007) (determining that plaintiff's claim for trade secret misappropriation based on the misappropriation of product designs was not preempted by federal copyright law).

[45]*See The Fair*, 228 U.S. at 25.

conceding it pursued a claim arising under federal law.  Pursuing a claim arising under

federal law established federal jurisdiction at the time of removal.

**Time of the first amended complaint**.  What occurred after removal is

remarkable in retrospect.  Target Strike affirmatively invoked this court's jurisdiction by

amending its complaint to add a claim under 15 U.S.C. § 1125(a).[46]  The amendment is

the second point in time relevant to the district court's consideration of the motion to

remand.

Although subject matter jurisdiction cannot be waived,[47] courts agree that subject

matter jurisdiction can be cured by the plaintiff's affirmative action to invoke the

jurisdiction of a federal court.  In *Moffitt v. Residential Funding Company*, the Fourth

Circuit considered subject matter jurisdiction where "the plaintiffs filed amended

complaints in federal court that alleged facts giving rise to federal diversity jurisdiction

under the Class Action Fairness Act of 2005 ("CAFA"),"[48] after their cases were removed

and prior to moving to remand.  Without deciding whether subject matter jurisdiction

existed at the time of removal — instead, the court assumed subject matter jurisdiction

---

[46]Docket entry # 25, ¶¶ 64-67.

[47]*See In re Shell Oil Co.*  932 F.2d 1523, 1527 n.7 (5th Cir. 1991) ("[I]t was well established that a plaintiff could waive objections to removal on any grounds other than a lack of subject matter jurisdiction by failing to assert such objections prior to engaging in affirmative conduct in federal court.").

[48]*Moffitt v. Residential Funding Co.*, 604 F.3d 156, 157-58 (4th Cir. 2010).

did not exist — the court determined the "plaintiffs independently conferred

jurisdiction on the district court by filing their amended class action complaints [by

alleging facts that clearly gave rise to federal jurisdiction under CAFA] prior to moving

to remand."[49]  Other courts have reached the same result.[50]

Judge Posner, writing for the Seventh Circuit, explained the reasoning for this

result in *Bernstein v. Lind-Waldock & Company*.  In *Bernstein*, the court determined that the

lawsuit was <u>not</u> removable to federal court at the time of removal, but found an

amended complaint alleging a federal cause of action cured jurisdiction.  Judge Posner

reasoned as follows:

> [A]fter [the plaintiff's] motion to remand was denied, he threw in the
> towel, as it were, and filed an amended complaint in federal court that
> included an unmistakable federal cause of action against the [defendant].
> The amended complaint was thus within the original jurisdiction of the
> federal district courts and it makes no difference that it was filed only
> because [the plaintiff's] previous suit had improperly been removed. If he
> was convinced that the original action was not removable he could have
> stuck by his guns and we would have vindicated his position on appeal.
> But once he decided to take advantage of his involuntary presence in

---

[49]*Moffitt*, 604 F.3d at 159-60.

[50]*See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998) ("After
removal of the case to federal court and the motion to remand was denied, plaintiffs
voluntarily amended their complaint, asserting a cause of action in federal court against
defendants….This court holds that plaintiffs cannot voluntarily invoke, and then
disavow, federal jurisdiction."); *Barbara v. N.Y. Stock Exch*, 99 F.3d 49, 56 (2d Cir. 1996)
("[I]f a district court erroneously exercises removal jurisdiction over an action, and the
plaintiff voluntarily amends the complaint to allege federal claims, we will not remand
for want of jurisdiction.").

federal court to add a federal claim to his complaint he was bound to remain there. Otherwise he would be in a position where if he won his case on the merits in federal court he could claim to have raised the federal question in his amended complaint voluntarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court. He "cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses."[51]

Like the plaintiff in *Bernstein*, Target Strike took advantage of its involuntary presence in federal court and added a federal claim. Had Target Strike been convinced its original petition was not removable it would have stuck by its guns and sought vindication on appeal. Instead, Target Strike sought the federal court's help to pursue ownership of Metal Miners Plus. Target Strike was content with federal court so long as it obtained favorable rulings on various motions. But once it received unfavorable rulings, Target Strike sought a remand. Target Strike should not be permitted to invoke the jurisdiction of the federal court and then disclaim it when it loses.[52] Even if subject matter jurisdiction did not exist at the time of removal, Target Strike cured jurisdiction by filing an amended complaint and adding a federal claim.

---

[51] *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185-86 (7th Cir. 1984).

[52] *Accord Brough v. United Steelworkers of Am.*, 437 F.2d 748, 750 (1st Cir. 1971) ("Plaintiff did not proceed simply on the basis of his original theory of recovery, however. He amended his complaint to add a second count, alleging breach of the union's duty of fair representation, a duty that obviously arises under federal law. This amendment had the effect of curing the defect in the district court's jurisdiction. Indeed, had such an amendment been made while the parties were in the state court, the case would have been immediately removable. Clearly plaintiff cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses.").

**Time of filing the motion to remand**. Once Target Strike relinquished its federal claim — the claim for false designation of origin under 15 U.S.C. § 1125(a) challenging ownership of Metal Miners Plus — the only basis for federal court jurisdiction was supplemental jurisdiction over Target Strike's state-law claims. That basis is the present basis for jurisdiction. As a case presenting only state-law claims, the court may construe Target Strike's motion as asking the district court to decline to exercise supplemental jurisdiction. This question presents the third point in time relevant to the district court's consideration of motion to remand — when Target Strike moved to remand this case.

A federal court may exercise supplemental jurisdiction "over…[state-law] claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…."[53] A federal court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction . . . ."[54] Although federal courts ordinarily decline to exercise jurisdiction over pendent state-law claims when "all federal claims are dismissed or otherwise eliminated from a case prior to trial," this general rule is neither mandatory nor absolute.[55]

---

[53]28 U.S.C. § 1367(a).

[54]28 U.S.C. § 1367(c)(3).

[55]*Batiste v. Island Records*, 179 F.3d 217, 227 (5th Cir. 1999).

Where the resolution of all other claims comes late in an action and substantial judicial resources have already been expended in the case, declining to exercise supplemental jurisdiction may be inappropriate.[56]  In determining whether to exercise supplemental jurisdiction, "a federal court should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims."[57]  "If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case."[58]  In this case, the balance of applicable factors weighs in favor of exercising supplemental jurisdiction.

Judicial economy.  The defendants accurately described the consideration of judicial economy: "[T]he judicial staff, the Magistrate Judge, and this Court have expended many hundreds of hours...on this litigation...."[59]  To remand this case now

---

[56]See Batiste, 179 F.3d at 227 (determining that the district court erred by declining to exercise supplemental jurisdiction over the plaintiffs' state law claim where the case had been pending in the district court for almost three years and the trial was scheduled to begin one month later; the appellate court found that "the factors of judicial economy, convenience, and fairness to the parties" required the district court to continue with the state law claim).

[57]Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

[58]Cohill, 484 U.S. at 357.

[59]Docket entry # 286, p. 1.

would not promote judicial economy.  Numerous pleadings and orders — 280 documents — were filed in this case before Target Strike moved to remand.  The number of reports and recommendations alone reflects the court's familiarity with this case.  No court is more familiar with this case than the federal district court.

Despite countless non-dispositive motions and numerous dispositive motions, the court has efficiently resolved the issues in this case.  Remanding this case to state court would require a state court judge to reach the district court's level of familiarity with this case — a level that must be reached without the assistance of law clerks — before resolving pending matters.  Reaching the required level of familiarity would require the parties to duplicate much of their prior efforts on this case.  There is no doubt the district court is in the best position to resolve pending matters because the district court has already invested significant judicial resources in this case.

Fifth Circuit "case law is clear that when a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case, that court has abused its discretion under 28 U.S.C. § 1367."[60]  In addition, if this case were remanded, there is a significant risk that Target Strike will attempt to re-litigate in state court

---

[60] *Brookshire Bros. Holding v. Dayco Products*, 554 F.3d 595, 602 (5th Cir. 2009).

rulings made against it by the district court, including those relating to expert testimony and summary judgment.[61]  The interest of judicial economy weighs in favor of exercising supplemental jurisdiction.

Convenience.  There is no convenience to be gained from remanding this case to state court.  The state court in which this case is filed was located within blocks of the location of the district court.  Because the locations are the same, remanding this case would not be more convenient for either parties, witnesses, or evidence.  The parties are already before the federal court; the witnesses have already been deposed under the Federal Rules of Civil Procedure, and evidence has already been discovered under the federal discovery rules.  The interest of convenience weighs in favor of exercising supplemental jurisdiction.

Fairness.  "The fairness factor concerns the prejudice to the parties that would arise from dismissal, and it too weighs in favor of dismissal."[62]  No question exists that 22 defendants would be prejudiced by remanding this case at this late date.  The

---

[61] *Accord Brookshire Bros. Holding*, 554 F.3d at 603 ("Finally, one more reason for reversing the remand order is that, if the order is not reversed, there is a significant risk that Brookshire will attempt to re-litigate in state court rulings made against it by the district court, including those relating to choice of law, prescription, breach of implied warranty, and application of Texas's economic-loss rule, and that this would cause the flexpipe defendants substantial prejudice.").

[62] *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588 (5th Cir. 1992).

defendants estimated they have spent over a million dollars on this litigation.[63]

Remanding this case would unnecessarily increase that cost.

Comity. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."[64] The only issues remaining in this case are issues of state-law, but those issues are not particularly complex. The case presents no novel questions of state law and no issue of first impression. The district court is experienced in the application of state law. The district court can provide the parties with a sure-footed application of state-law and a jury with sure-footed instructions about state law. At this point, comity does not weigh in favor of remand.

Manipulation. The proceedings in this case indicate Target Strike seeks to manipulate the forum. So long as Target Strike prevailed on legal challenges,[65] it did not

---

[63]Docket entry # 286, p. 1.

[64]*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

[65]Docket entry # 72 (denying Martson's motion for more definite statement because the amended complaints gave Marston fair notice of plaintiffs' claims); docket entry # 73 (recommending that Marston's motion to dismiss be denied because Target Strike's amended complaint added sufficient detail about reliance on alter ego liability and because GRN I's amended complaint identified GRN I's causes of action); docket entry # 74 (recommending denying the Addington defendants' motion to dismiss because amended pleadings provided sufficient specificity); docket entry # 79 (denying Marston's motion to dismiss); docket entry # 80 (denying the Addington defendants' motion to dismiss); docket entry # 136 (explaining that the motion to compel arbitration should be denied because the underlying arbitration agreement did not apply to the

question the jurisdiction of the federal court.  After losing legal challenges,[66] Target

Strike sought to remand the case.  This factor weighs against remand.

   **Recommendation**.  Target Strike's challenge comes too late.  Had Target Strike

challenged the basis of removal when this case was removed, and disavowed a claim

arising under federal law, a remand would have been appropriate.  As master of its

complaint, Target Strike's acquiescence to the defendants' characterization of its original

complaint and its subsequent actions showed Target Strike challenged the ownership of

a copyrighted work.  That challenge constituted a claim arising under federal law and

served as a basis for federal-question jurisdiction.  Even if subject matter jurisdiction was

lacking at removal, Target Strike cured jurisdiction by quickly amending its complaint

and adding a federal claim.  After Target Strike relinquished its federal claim, state-law

claims — over which the court has supplemental jurisdiction — remain.  The balance of

_____

parties or the claims in dispute); docket entry # 137 (recommending denying Mexivada's
motion to dismiss); & docket entry # 146 (denying Mexivada's motion to dismiss and
denying motion to compel arbitration).

   [66]Docket entry # 242 (recommending summary judgment in favor of Hartley and
Shaffer); docket entry # 258 (granting motions for summary judgment and dismissing
claims against Hartley and Shaffer); docket entry # 259 (recommending summary
judgment for defendants Texas Research, LLC; Kost Holdings, Ltd.; ADDKO, Inc.; and
L.K. & C.A., Inc.); docket entry # 262 (recommending summary judgment in favor of
defendants Addington, Kost, and Al-Bassam); docket entry # 270 (excluding Target
Strike's damages expert); docket entry # 278 (granting summary judgment motion filed
by Texas Research, LLC; Kost Holdings, Ltd.; ADDKO, Inc. and L.K. & C.A., Inc.);
docket entry # 284 (explaining why Target Strike should not be permitted to supplement
its expert report).

applicable factors weighs in favor of exercising supplemental jurisdiction. For these reasons, I recommend denying Target Strike's motion to remand (docket entry # 281).

If the court accepts this recommendation, no reason exists to sever the defendants who have obtained summary judgment. After Target Strike asked for remand, the thus-far prevailing defendants moved for a severance and a final judgment out of abundance of caution, to preserve the rulings already made in their favor and to avoid additional defense costs.[67] If the court denies the motion to remand, it can deny the defendants' motion to sever (docket entry # 288) as unnecessary. The court can also deny Target Strike's motions for a hearing on its motion to remand (docket entry # 292) as moot.

**Instructions for Service and Notice of Right to Object/Appeal.** The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[68] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the

---

[67]Docket entry # 288, p. 2.

[68]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

23

magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[69]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[70]

**SIGNED** on June 30, 2011.


NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[69]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[70]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).