# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TARGET STRIKE, INC., | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff, | § | |
| | § | SA-10-CV-0188-OLG (NN) |
| v. | § | |
| | § | |
| MARSTON & MARSTON, INC.; | § | |
| MARSTON ENVIRONMENTAL, INC.; | § | |
| CLIFFORD R. "KIP" WILLIAMS; | § | |
| GOLD REEF INTERNATIONAL, INC.; | § | |
| GOLD REEF OF NEVADA, INC.; | § | |
| CRANDELL ADDINGTON; | § | |
| SADIK AL-BASSAM; | § | |
| RICHARD CRISSMAN CAPPS; | § | |
| LOU B. KOST, JR.; | § | |
| PAUL STROBEL; | § | |
| PANTHER RESOURCES, INC.; | § | |
| PANTHER RESOURCES | § | |
|    PARTNERS LLLP; | § | |
| MEXIVADA MINING CORPORATION; | § | |
| & OTHER UNKNOWN DEFENDANTS | § | |
|    ACTING IN CONCERT WITH THE | § | |
|    ABOVE NAMED DEFENDANTS, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

***************************************

| | |
|---|---|
| CLIFFORD R. "KIP" WILLIAMS; | § |
| RICHARD CRISSMAN CAPPS; and | § |
| PAUL STROBEL; | § |
| | § |
|     Counter-Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| TARGET STRIKE, INC.; and | § |
| GOLD RESOURCES OF | § |
|  NEVADA, LLC (GRN I). | § |
| | § |
|     Counter-Defendants. | § |
| | § |

**************************************

| | |
|---|---|
| | § |
| CRANDALL ADDINGTON; | § |
| SADIK AL-BASSAM; | § |
| LOU B. KOST, JR.; | § |
| LOU KOST HOLDINGS, LTD.; | § |
| RESURRECTION CANYON, INC., f/k/a | § |
|  PANTHER RESOURCES, INC.; | § |
| RESURRECTION CANYON, LLLP, f/k/a | § |
|  PANTHER RESOURCES | § |
|  PARTNERS, LLLP; ADDKO, INC.; | § |
| TEXAS RESEARCH, LLC; and | § |
| L.K. & C.A., INC., | § |
| | § |
|     Counter-Plaintiffs, | § |
| | § |
| v. | § |
| | § |
| TARGET STRIKE, INC, and | § |
| GOLD RESOURCES OF | § |
|  NEVADA, LLC (GRN I), | § |
| | § |
|     Counter-Defendants. | § |

```
************************************
RESURRECTION CANYON, LLLP, f/k/a    §
   PANTHER RESOURCES               §
   PARTNERS, LLLP,                 §
                                   §
            Counter-Plaintiff,     §
v.                                 §
                                   §
TARGET STRIKE, INC. and            §
GOLD RESOURCES OF                  §
   NEVADA, LLC (GRN I),            §
                                   §
            Counter-Defendants.    §
                                   §
************************************
CLIFFORD R. "KIP" WILLIAMS,        §
RICHARD CRISSMAN CAPPS, and        §
PAUL STROBEL,                      §
                                   §
            Counter-Plaintiffs,    §
v.                                 §
                                   §
TARGET STRIKE, INC. and            §
GOLD RESOURCES OF                  §
   NEVADA, LLC (GRN I),            §
                                   §
            Counter-Defendants.    §
```

# FIFTEENTH REPORT AND RECOMMENDATION

**TO:** Honorable Orlando Garcia
United States District Judge

This report and recommendation addresses the motion for summary judgment filed by defendants Marston & Marston, Inc., and Marston Environmental, Inc.

(together, the Marston defendants) and recommends summary judgment in favor of the Marston defendants. The relevant pleadings are sealed, but I did not seal this report because it does not specifically refer to confidential matters.

**Nature of the case as to the Marston defendants**. Marston & Marston, Inc. described itself as a "[m]ining engineering and consulting company that primarily provides coal and oil sands mining services."[1] Marston Environmental, Inc. described itself as an "[e]nvironmental services and civil engineering company that provides field services, such as onsite geological investigations…."[2] In 1996, plaintiff Target Strike contracted with Marston Environmental for gold mining consulting services.[3] Target Strike has never had a business relationship with Marston and Marston.

Target Strike is a corporation formed by three individuals — Alex Weinberg; Alex's father, Naum; and Emil Ostrovsky — to promote a technology called Target Forecasting. Ostrovsky invented Target Forecasting. Alex Weinberg has been the only real player in this lawsuit. Target Strike maintains Target Forecasting can identify the locations of minerals without the time and expense of conventional methods of discovery. The reliability of Target Forecasting has not been proven.

Although Target Strike's relationship with Marston Environmental ended in

---

[1]Docket entry # 198, p. 2.

[2]*Id*.

[3]Docket entry # 198, ex. B (consulting agreement).

1997, Target Strike sued Marston Environmental, Marston and Marston, and 20 other defendants on February 10, 2010. Target Strike sued the defendants for 10 causes of action. Central to each claim is Target Strike's allegation that Marston Environmental — through defendant Clifford "Kip" Williams" — shared Target Strike's trade secrets with the named defendants. Target Strike's trade secrets are locations of minerals as identified by Target Forecasting. Target Strike refers to an identified location as an anomaly. Target Strike's claims are based on purported identicalness of Target-Forecasting-identified locations and mineral claims staked on behalf of the Gold Reef defendants.[4]

**The Marston defendants' motion**. The following matrix summarizes the Marston defendants' motion and Target Strike's response:

| The Marston defendants' grounds for summary judgment | Target Strike's response |
| --- | --- |
| Target Strike's claims are barred by limitations. Target Strike did not plead the discovery rule. | Target Strike did not know, or should not have discovered, the defendants' wrongful acts until February 16, 2008. |
| There is no evidence the Marston defendants wrongfully disclosed | The defendants fraudulently concealed their bad acts; summary-judgment |

---

[4]The Gold Reef defendants are Williams, Richard Crissman Capps, William J. Hartley, William Shaffer, Gold Reef International, Inc., and Gold Reef of Nevada, Inc. The court granted summary judgment in favor of Hartley and Shaffer. *See* docket entry # 258. The motion for summary judgment filed by Williams and Capps is pending. *See* docket entry # 180. The motion for summary judgment filed by Gold Reef International, Inc., and Gold Reef of Nevada, Inc. is the subject of the Fourteenth Report and Recommendation. *See* docket entry # 306.

| confidential information. | evidence raises a fact question about fraudulent concealment. |
|---|---|
| There is no evidence Target Strike suffered any damages or that the Marston defendants received any benefit. | The Marston defendants benefitted from knowledge of Target-Forecasting-identified locations of minerals. |
| There is no evidence to pierce the corporate veil to hold Marston & Marston liable for Marston Environmental's conduct. | Evidence exists to pierce the corporate veil at to Marston & Marston. |

**Applicable standards**. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing a summary-judgment motion, the "standard…is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."[5] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[6] Taking the record as a whole in this case, a rational trier of fact cannot find for Target Strike; there is no genuine issue of material fact for trial.

**Limitations**. The Marston defendants maintained Target Strike's claims are barred by limitations. "Statutes of limitation operate to prevent the litigation of stale claims; they 'afford plaintiffs what the legislature deems a reasonable time to present

---

[5]*James by James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

[6]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6

their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise.'"[7] The summary-judgment record reflects stale claims.

Target Strike's relationship with Marston Environmental began in 1996. At that time, Williams was president of Marston Environmental. Target Strike and Marston Environmental entered into a consulting agreement to assess anomalies identified using Target Forecasting. Target Strike hoped the anomalies represented gold deposits. Target Strike provided Marston Environmental with information about the locations. Marston Environmental created a map reflecting the anomalies. The parties dispute what happened to information about the locations on the original map, but that dispute has no bearing on the question of limitations.

The limitations periods for Target Strike's claims range from two to four years.[8]

---

[7]*Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

[8]The limitations period for Target Strike's claims for breach of contract and breach of fiduciary duty is four years. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (breach of contract);Tex. Civ. Prac. & Rem. Code § 16.051 ("Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."); Tex. Civ. Prac. & Rem. Code § 16.004(a)(5) (breach of fiduciary duty). The limitations period for Target Strike's claims for negligence, conversion, conspiracy, and unjust enrichment is two years. *See* Tex. Civ. Prac. & Rem. Code § 16.003 ("[A] person must bring suit for …conversion of personal property, taking or detaining the personal property of another…not later than two years after the day the cause of action accrues."); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) ("Unjust enrichment

7

Under Texas's legal injury rule, "a cause of action accrues and limitations begins to run when 'the wrongful act effects an injury.'"[9] Under this rule, the limitations period for Target Strike's claims began to run on the date of the alleged disclosure because all of Target Strike's claims are based on wrongful disclosure of its trade secrets.[10] Target Strike maintained that Williams wrongfully disclosed the locations of the anomalies to defendants Crandell Addington and Lou B. Kost on January 28, 2002 during a meeting with nonparty D.L. Neese. Target Strike's relationship with Marston Environmental

---

claims are governed by the two-year statute of limitations in section 16.003 of the Civil Practice and Remedies Code."); *Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818, 822 (Tex. App.—Corpus Christi 1988, writ denied) ("Civil conspiracy is governed by the two year statute of limitations."); *Valverde v. Biela's Glass & Aluminum Products*, 293 S.W.3d 751, 753 (Tex. App.—San Antonio 2009, pet. denied) (negligence). The limitations period for the claim for misappropriation of trade secrets and proprietary information is three years. *See* Tex. Civ. Prac. & Rem. Code § 16.010.

[9]*Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (citation omitted). "The date the cause of action accrues for purposes of limitations is a question of law. In most circumstances, 'a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Dernick Resources v. Wilstein*, 312 S.W.3d 864, 878 (Tex. App.—Houston [1 Dist.] 2009, no pet.) (citations omitted).

[10]Breach of contract and breach of fiduciary duty by failing to maintain the confidentiality of information provided by Target Strike; negligent misrepresentation by agreeing to safeguard Target Strike's information; misappropriation of proprietary information by using Target Strike's proprietary information; negligence by failing to exercise ordinary care in protecting Target Strike's information from disclosure; unfair competition by misappropriating proprietary information; conversion and unjust enrichment by assuming and exercising dominion and control over Target Strike's confidential information; conspiracy by conspiring with other defendants to misappropriate trade secrets.

had ended at that time. Using the date of the alleged disclosure as Target Strike's legal injury, the limitations periods for all claims ran on January 27, 2006. Target Strike filed this case four years after that date — on February 10, 2010. The Marston defendants are entitled to summary judgment unless Target Strike can raise a fact question about limitations.

**Discovery rule**. Target Strike relied on the discovery rule to overcome limitations. "In some types of cases, the discovery rule may defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action."[11] To rely on the discovery rule, Target Strike must have pleaded sufficient facts to put the defendants on notice of its reliance on the discovery rule.[12]

The only factual allegations implicating the discovery rule are:

(1) "[The defendants] also disclosed [Target Strike's]…confidential and proprietary information to third parties without [Target Strike's]… authorization, knowledge or consent."

(2) "The defendants have also fraudulently concealed their wrongdoing, including the timing of it."[13]

The first allegation supported Target Strike's claim for breach of fiduciary duty. The

---

[11] *Barker v. Eckman*, 213 S.W.3d 306, 311-12 (Tex. 2006).

[12] *See Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1425 (5th Cir. 1992).

[13] Docket entry # docket entry # 119, ¶¶ 51 & 56.

9

second allegation supported Target Strike's claim for misappropriation of trade secrets. The complaint did not include the factual allegations included in Target Strike's response to the limitations argument. Considering Target Strike's complaint consists of 31 pages, the two quoted factual allegations were insufficient to put the defendants on notice of its reliance on the discovery rule. Target Strike cannot rely on the discovery rule because the complaint did not put the defendants on notice about reliance on the discovery rule.

Even if the defendants were placed on notice, the Marston defendants presented summary-judgment evidence showing that Target Strike should have known about the facts of its case earlier. The Marston defendants presented evidence showing that knowledge of the Gold Reef claims was available before the expiration of the latest limitations period. Target Strike's explanation about why it did not know, or should have known, the facts giving rise to its claims earlier does not overcome that evidence.

Target Strike maintained the limitations period began to run six years after the latest limitations period ran, on February 16, 2008, when Weinberg read an article in *The San Antonio Business Journal*.[14] Weinberg testified that the article caused him to investigate Addington's activities and ultimately conclude that the named defendants stole Target Strike's confidential information. Target Strike maintained it did not know

---

[14]Docket entry # 222, ex. 14, p. 166 (Weinberg's testimony about reading the journal article).

about the alleged wrongful disclosure until Weinberg learned that defendant William Shaffer staked five claims on behalf of the Gold Reef defendants. Shaffer filed those claims with the Bureau of Land Management on August 8, 2005.[15] Even using that date as the legal injury date, the limitations periods for all claims ran before Target Strike filed this case.

Target Strike's reliance on the article in *The San Antonio Business Journal* does not defer the accrual of limitations because Target Strike should have known about the facts giving rise to this case earlier. Central to Target Strike's claims is the allegation of identicalness of Target-Forecasting-identified anomalies and the Gold Reef claims. Considering Target Strike's insistence about the value of Target-Forecasting-identified anomalies — last estimated at $161 million — Target Strike should have monitored activities implicating the anomalies all along. A reasonable owner of assets valued at $161 million would have vigilantly monitored publicly-available information for potential compromises, without waiting to become suspicious. Any claim staked in close proximity of an anomaly should have been enough to trigger an investigation. Had Target Strike monitored activities implicating its anomalies, it would have known about the Gold Reef claims earlier. Weinberg's explanation about how he learned about the Gold Reef claims illustrates this point.

Weinberg explained that after he read the article, he "monitored the Gold Reef

---

[15]Docket entry # 198, ex. H (certificates of location signed by Shaffer as locator).

website for press releases, and also SEDAR, the website for the Vancouver stock exchange on which Gold Reef was listed, for public filings."[16] Weinberg stated that he "learned how to use the mining claims reporting capacity offered by the Bureau of Land Management website" and he found that claims had been staked in locations proximate to Target-Forecasting-identified anomalies. Weinberg explained that he "continued to review Gold Reef's website, and eventually learned that in 2009 a company called Panther was proposing to acquire all of the assets and liabilities of Gold Reef."[17]

Weinberg's explanation shows that Target Strike could have learned about the Gold Reef claims before February 16, 2008. That Weinberg would not have become suspicious about the alleged disclosure had he not read the article does not negate Target Strike's estimation of the value of its anomalies or the availability of public information about the claims. It does not matter that the claims were staked in Shaffer's name rather than Gold Reef's name because the potential for compromise was the same. Reading the article triggered Weinberg's curiosity about Addington's activities, but it did not preclude Target Strike from discovering the Gold Reef claims earlier. The Marston defendants are entitled to summary judgment based on limitations unless Target Strike has an affirmative defense.

**Fraudulent concealment**. Target Strike also relied on fraudulent concealment.

---

[16] Docket entry # 222, ex. 1, ¶ 14.

[17] *Id.*

12

"A defendant's fraudulent concealment of wrongdoing may toll the running of limitations. Fraudulent concealment will not, however, bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence."[18] The discussion about Target Strike's reliance on the discovery rule explains why Target Strike failed to exercise reasonable diligence in discovering the alleged wrongful disclosure. The reasonable owner of assets valued at $161 million would have vigilantly monitored activities implicating a compromise of the anomalies. Target Strike did not monitor activities implicating the anomalies until after Weinberg read the article. Waiting to become suspicious before monitoring activity implicating a compromise of valuable assets does not constitute reasonable diligence.

Even if Target Strike's explanation constituted reasonable diligence, Target Strike's reliance on fraudulent disclosure still fails.

> The elements of fraudulent concealment are (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. A party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue with regard to each of the four elements.[19]

As with other summary-judgment motions in this case, Target Strike did not raise a fact

---

[18] *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008) (citation omitted).

[19] *Jones v. Thompson*, 338 S.W.3d 573, 583 (Tex. App.—El Paso 2010, pet. denied) (citations omitted).

question about underlying tort; specifically, about whether the Marston defendants wrongfully disclosed the locations of Target Strike's anomalies. I explained in my Eighth Report and Recommendation that Target Strike insisted that Williams shared Target Strike information during the January meeting with Addington and Kost. After reviewing the summary-judgment record, I concluded that no summary-judgment evidence showed Target-Strike information was presented at the meeting.

Target Strike complained that Williams testified he shared maps of 51 anomalies with Addington and Kost, but Williams explained that the information he shared belonged to Gold Resources of Nevada, not Target Strike. Target Strike also complained that it was not consulted prior to the meeting, but the summary-judgment evidence indicates that non-party D.L. Neese controlled Gold Resources of Nevada, not Target Strike. The background discussed in the relied-upon business plans for LK & CA and Gold Reef of Nevada[20] does not raise a fact question about whether a defendant stole Target Strike's information;[21] the discussion set forth in the documents is consistent with the defendants' testimony about the events underlying this case. Target Strike presented no evidence raising a fact question about whether the "targets" referred to in the documents are the alleged stolen anomalies. Kost's testimony about investing $1

---

[20] Docket entry # 222, exs. 10 & 16.

[21] Docket entry # 217, pp. 5-6 & 17 (arguing that defendants' business plans confirm Target Strike's information was wrongfully disclosed).

14

million[22] in gold exploration does not raise a fact question about exploring for gold using on Target Strike's anomalies.[23] The parties' disputes over why mineral claims are staked in an individual's name rather than a company name, whether information about staked claims is publically-available so as to place a person on notice about a staked claim, the perpetuality of confidentiality agreements, whether Williams held himself out as vice-president of Marston and Marston do not matter unless Target Strike raises a fact question about wrongful disclosure. That, Target Strike has not done. Insisting that Gold Reef's claims stemmed from Target Strike's trade secrets do not make it so.

In addition, there is no summary-judgment evidence raising a fact question about the use of deception or Target Strike's reliance on deception. To the extent Target Strike relied on its expert to opine that mining companies stake claims in the names of individuals to conceal the owners of claims, that evidence was previously excluded.[24] To the extent, Target Strike maintained that Williams was negligent about the information he shared with Addington and Kost,[25] "[a] showing that the defendant was

---

[22] Docket entry # 222, ex. 13, p. 266 (Kost testified that he and his partners invested $1 million for gold exploration in Nevada).

[23] Docket entry # 217, p. 6 (relying on testimony to support its argument that the Gold Reef defendants drilled for gold using Target Strike's anomalies)

[24] Docket entry # 270.

[25] Docket entry # 119, # 27.

merely negligent in what it did is not sufficient to establish the affirmative defense [of fraudulent concealment]."[26] Target Strike did not raise a fact question about fraudulent concealment so as to toll the running of limitations.

**Recommendation**. Target Strike's claims are barred by limitations. For this reason, I recommend GRANTING the Marston defendants' motion for summary judgment (docket entry #198) and ENTERING summary judgment in favor of Marston & Marston, Inc., and Marston Environmental, Inc.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[27] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for

---

[26]*Lozada v. Farrall & Blackwell Agency*, 323 S.W.3d 278, 290 (Tex. App.—El Paso 2010, no pet.).

[27]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[28] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[29]

**SIGNED** on August 15, 2011.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[28]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[29]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).