UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TARGET STRIKE, INC., | § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. |
| MARSTON & MARSTON, INC.; | § | SA-10-CV-0188 OLG (NN) |
| MARSTON ENVIRONMENTAL, INC.; | § | |
| CLIFFORD R. "KIP" WILLIAMS; | § | |
| GOLD REEF INTERNATIONAL, INC.; | § | |
| GOLD REEF OF NEVADA, INC.; | § | |
| CRANDELL ADDINGTON; | § | |
| SADIK AL-BASSAM; | § | |
| RICHARD CRISSMAN CAPPS; | § | |
| LOU B. KOST, JR.; PAUL STROBEL; | § | |
| PANTHER RESOURCES, INC., n/k/a | § | |
|   RESURRECTION CANYON, INC.; | § | |
| PANTHER RESOURCES PARTNERS | § | |
|   LLLP, n/k/a RESURRECTION | § | |
|   CANYON, LLLP; | § | |
| MEXIVADA MINING CORPORATION; | § | |
| UNKNOWN DEFENDANTS ACTING | § | |
|   WITH NAMED DEFENDANTS, | § § | |
| Defendants. | § | |
| ************************************** | | |
| RESURRECTION CANYON, LLLP, | § | |
| PANTHER RESOURCES | § | |
| PARTNERS, LLLP, | § § | |
| Counter-Plaintiff, | § | |
| v. | § § | |
| TARGET STRIKE, INC. and | § | |
| GOLD RESOURCES OF NEVADA, LLC, | § § | |
| Counter-Defendants. | § | |

# SEVENTEENTH REPORT AND RECOMMENDATION

TO:   Honorable Orlando Garcia
      United States District Judge

This report and recommendation addresses the motion for summary judgment filed by defendants Clifford "Kip" Williams and Richard Crissman Capps. The relevant pleadings are sealed, but I did not seal this report because it does not specifically refer to confidential matters. After studying the summary-judgment record, I recommend summary judgment in favor of Williams and Capps.

**Nature of the case as to Williams and Capps**. Williams — a geologist — has a central role in this lawsuit. Previously, Williams was president of defendant Marston Environmental, Inc. In 1996, plaintiff Target Strike and Marston Environmental entered into a consulting agreement for geological services. Marston Environmental agreed to assess locations for potential mineral exploration. Target Strike identified the locations using a technology named "Target Forecasting." According to Target Strike, Target Forecasting can identify the locations of minerals without the time and expense of conventional methods of discovery. Target Strike used the term "anomaly" to refer to an identified location. Target Strike hoped the anomalies represented gold deposits, but the reliability of Target Forecasting had not been proved.

Target Strike provided Williams with preliminary information about the anomalies. In early 1997, after the initial work, Target Strike's relationship with Marston Environmental ended. Target Strike created a corporate entity to explore

anomalies promising gold. The entity — former plaintiff and counter-defendant Gold Resources of Nevada LLC — was comprised of Target Strike, and nonparty investors Chris MaKay and D.L. Neese & Assigns.

In June 1997, Marston Environmental entered a consulting agreement with Gold Resources of Nevada. The objective was to field test two anomalies called "Double Mountain." Despite investment funds to field test Double Mountain, no field testing occurred under Target Strike control. During this time period, Marston Environmental contracted with Capps for geological services. Capps provided services for 30 days in 1998. Capps has a minor role in this lawsuit.

Without progress on Double Mountain, Target Strike's relationship with the Double Mountain investors deteriorated. Target Strike and the investors submitted their dispute to arbitration. In September 2001, the arbitrators awarded management control of Gold Resources of Nevada to investor Neese.[1]

Neese then approached defendants Crandell Addington and Lou B. Kost about investing in the Double Mountain project. Neese, Addington, Kost and Williams met on January 28, 2002 to discuss additional investment in Double Mountain. The information Williams conveyed during the meeting forms the basis of Target Strike's allegation that the defendants misappropriated its trade secrets. The alleged trade secrets are the locations of anomalies.

---

[1] Docket entry # 211, ex. H-5 (arbitration order).

Addington and Kost agreed to invest in the Double Mountain project. Defendant LK & CA, Inc. served as the corporate entity for the investment. With the additional funding, field testing began on Double Mountain. No gold was discovered.

Subsequently, Addington and Kost created a gold exploration company — defendant Gold Reef International. That company hired Marston Environmental as a consultant. At that time, Williams was still president of Marston Environmental. Williams later retired and began working for Gold Reef.

Capps began working for Gold Reef in 2005. During the time Williams and Capps worked for Gold Reef, the company staked mineral claims. Target Strike maintained Gold Reef's claims are in the same geographical areas as eight of its anomalies.[2] Target Strike's claims against Williams and Capps are based on purported identicalness of Target Strike's anomalies and Gold Reef's claims.

**The pending motion**. Williams and Capps joined other motions for summary judgment filed in this case and asked for summary judgment on the following grounds: (1) limitations, (2) no evidence of wrongful disclosure, and (3) no evidence of damages.[3] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2]Docket entry # 119, ¶ 38.

[3]Docket entry # 180.

law."[4]  Williams and Capps met this burden.

**Limitations**.  Williams and Capps joined defendants Marston & Marston, Inc., and Marston Environmental, Inc., in asking for summary judgment on grounds that Target Strike's claims are barred by limitations.  I explained in my fifteenth report and recommendation[5] why Target Strike's claims against the Marston defendants are time-barred.  The same analysis applies to Williams and Capps.

The limitations periods for Target Strike's claims range from two to four years.[6]  Under Texas's legal injury rule, "a cause of action accrues and limitations begins to run

---

[4]Fed. R. Civ. P. 56(a).

[5]Docket entry # 315.

[6]The limitations period for Target Strike's claim for breach of fiduciary duty is four years. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(5).  The limitations period for Target Strike's claims for negligent misrepresentation, conversion, conspiracy, and unjust enrichment is two years.  *See* Tex. Civ. Prac. & Rem. Code § 16.003 ("[A] person must bring suit for …conversion of personal property, taking or detaining the personal property of another…not later than two years after the day the cause of action accrues."); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) ("Unjust enrichment claims are governed by the two-year statute of limitations in section 16.003 of the Civil Practice and Remedies Code."); *Cathey v. First City Bank of Aransas Pass*, 758 S.W.2d 818, 822 (Tex. App.—Corpus Christi 1988, writ denied) ("Civil conspiracy is governed by the two year statute of limitations."); *Hendricks v. Thornton*, 973 S.W.2d 348, 364 (Tex. App.—Beaumont 1998, pet. denied) (negligent misrepresentation).  The limitations period for the claim for misappropriation of trade secrets and proprietary information and unfair competition is three years.  *See* Tex. Civ. Prac. & Rem. Code § 16.010.

when 'the wrongful act effects an injury.'"[7] Under the rule, the limitations period for Target Strike's claims began to run on the date of the alleged disclosure because all of Target Strike's claims are based on wrongful disclosure of its trade secrets.[8] Target Strike maintained that Williams wrongfully disclosed the locations of the anomalies during the January 28, 2002 meeting. Using the date of the alleged disclosure as Target Strike's legal injury, the limitations periods for all claims ran on January 27, 2006. Target Strike filed this case four years after that date — on February 10, 2010. Williams and Capps are entitled to summary judgment unless Target Strike can raise a fact question about limitations.

**Discovery rule**. Target Strike relied on the discovery rule to overcome limitations, but Target Strike cannot rely on the discovery rule because it did not plead sufficient facts to put Williams and Capps on notice of its reliance on the discovery

---

[7]*Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (citation omitted). "The date the cause of action accrues for purposes of limitations is a question of law. In most circumstances, 'a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Dernick Resources v. Wilstein*, 312 S.W.3d 864, 878 (Tex. App.—Houston [1 Dist.] 2009, no pet.) (citations omitted).

[8]Breach of fiduciary duty by failing to maintain the confidentiality of information provided by Target Strike; negligent misrepresentation by agreeing to safeguard Target Strike's information; misappropriation of proprietary information by using Target Strike's proprietary information; unfair competition by misappropriating proprietary information; conversion and unjust enrichment by assuming and exercising dominion and control over Target Strike's confidential information; conspiracy by conspiring with other defendants to misappropriate trade secrets.

rule.⁹ Even if the defendants were placed on notice, the summary-judgment evidence shows Target Strike should have known about the facts of its case earlier.

Target Strike maintained that it had no reason to know the factual allegations of this case until February 16, 2008, when Target Strike president Alex Weinberg read an article in *The San Antonio Business Journal* about Addington.⁹ According to Weinberg, the article made him suspicious and lead to his discovery of the Gold Reef claims.¹⁰ Target Strike's reliance on the article in *The San Antonio Business Journal* does not defer the accrual of limitations because Target Strike should have known about the facts giving rise to this case earlier. Central to Target Strike's claims is the allegation of identicalness of Target Strike's anomalies and the Gold Reef claims. Information about the Gold Reef claims was available before the expiration of the latest limitations period.

---

⁹The only factual allegations implicating the discovery rule are:

(1) "[The defendants] also disclosed [Target Strike's]…confidential and proprietary information to third parties without [Target Strike's]… authorization, knowledge or consent."

(2) "The defendants have also fraudulently concealed their wrongdoing, including the timing of it."

Docket entry # docket entry # 119, ¶¶ 51 & 56. The first allegation supported Target Strike's claim for breach of fiduciary duty. The second allegation supported Target Strike's claim for misappropriation of trade secrets.

⁹Docket entry # 221, p. 6.

¹⁰Docket entry # 222, ex. 14, pp. 166-67.

Defendant William Shaffer staked five claims on behalf of the Gold Reef defendants. Shaffer filed those claims with the Bureau of Land Management on August 8, 2005.[11] Using that date as the legal injury date, the limitations periods for all claims ran before Target Strike filed this case.

Considering Target Strike's insistence about the value of Target-Forecasting-identified anomalies — last estimated at $161 million[12] — Target Strike should have consistently monitored activities implicating the anomalies. A reasonable owner of assets valued at $161 million would have vigilantly monitored publicly-available information for potential compromises, without waiting to become suspicious. Any claim staked in close proximity of an anomaly should have been enough to trigger an investigation. Had Target Strike monitored activities implicating its anomalies, it would have known about the Gold Reef claims earlier. Reading the article triggered Weinberg's curiosity and motivated him to investigate Addington's activities, but nothing precluded Target Strike from discovering the Gold Reef claims earlier. Williams and Capps are entitled to summary judgment based on limitations unless Target Strike has an affirmative defense.

**Fraudulent concealment**. Target Strike also relied on fraudulent concealment.[13]

---

[11]Docket entry # 198, ex. H (certificates of location signed by Shaffer as locator).

[12]Docket entry # 282, ex. 1, p. 2 (estimating avoided costs as $161 million).

[13]Docket entry # 221, pp. 6 & 11.

"A defendant's fraudulent concealment of wrongdoing may toll the running of limitations. Fraudulent concealment will not, however, bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence."[14] The discussion about Target Strike's reliance on the discovery rule explains why Target Strike failed to exercise reasonable diligence in discovering the alleged wrongful disclosure. The reasonable owner of assets valued at $161 million would have vigilantly monitored activities implicating a compromise of the anomalies. Target Strike did not monitor activities implicating the anomalies until after Weinberg read the article. Waiting to become suspicious before monitoring activity implicating a compromise of valuable assets does not constitute reasonable diligence.

Even if Target Strike's explanation constituted reasonable diligence, Target Strike's reliance on fraudulent concealment fails because Target Strike did not raise a fact question about the underlying tort; specifically, about whether Williams wrongfully disclosed the locations of Target Strike's anomalies or whether Williams and Capps used Target Strike information to stake Gold Reef's claims. Although Target Strike maintained Williams disclosed its confidential information, Williams testified that the information he shared with Addington and Kost belonged to Gold Resources of Nevada, not Target Strike. Neese, Addington, and Kost testified that no Target Strike information was conveyed during the meeting. In addition, Capps testified that he did

---

[14]*Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008) (citation omitted).

9

not know about the origin of the Double Mountain project, but just drilled holes in support of the project.[15] He also stated that he mapped four project areas in 2005 and 2006.[16] Although Target Strike insisted Capps aided Gold Reef in staking claims using its confidential information,[17] insisting that Gold Reef's claims stemmed from Target Strike's trade secrets does not make it so.

In addition, no summary-judgment evidence raised a fact question about the use of deception or Target Strike's reliance on deception. To the extent Target Strike relied on its expert to opine that mining companies stake claims in the names of individuals to conceal the owners of claims,[18] that evidence was previously excluded.[19] To the extent, Target Strike maintained that Williams was negligent about the information he shared with Addington and Kost,[20] "[a] showing that the defendant was merely negligent in what it did is not sufficient to establish the affirmative defense [of fraudulent concealment]."[21] Target Strike did not raise a fact question about fraudulent

---

[15] Docket entry # 180, ex. A, p. 89.

[16] *Id.*, p. 90.

[17] Docket entry # 221, p. 15.

[18] Docket entry # 221, p. 12.

[19] Docket entry # 270.

[20] Docket entry # 119, ¶ 27.

[21] *Lozada v. Farrall & Blackwell Agency*, 323 S.W.3d 278, 290 (Tex. App.—El Paso 2010, no pet.).

concealment so as to toll the running of limitations.

**Recommendation**. Target Strike's claims are barred by limitations. For this reason, I recommend GRANTING the pending motion for summary judgment (docket entry #180) and ENTERING summary judgment in favor of Williams and Capps.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[22] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de*

---

[22]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

11

*novo* determination by the district court.[23] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[24]

**SIGNED** on August 29, 2011.

*[signature: Nancy Stein Nowak]*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[23]*Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[24]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).